*Formatted for Electronic Distribution*                                    *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Carol Marie Fenimore Safari,** | ) | **Case No. 23-10101** |
| | ) | **Chapter 13** |
| **Debtor.** | ) | |

Filed & Entered
On Docket
07/02/2024

*Appearances:*

<table>
<tr><td>

*Rebecca A. Rice, Esq.*
*Cohen & Rice, P.C.*
*Shrewsbury, Vermont*
*For the Debtor*

</td><td>

*John J. Kennelly, Esq.*
*Pratt, Vreeland, Kennelly,*
*Martin & White, Ltd.*
*Rutland, Vermont*
*For the John and Teresa Fenimore*
*Living Trust*

</td></tr>
</table>

*Jan M. Sensenich, Esq.*
*Norwich, Vermont*
*Chapter 13 Trustee*

**MEMORANDUM OF DECISION**
**DENYING PLAN CONFIRMATION AND DISMISSING CASE**

The John and Teresa Fenimore Living Trust (the "Trust"), secured creditor, objects to confirmation of Debtor Carol Marie Fenimore Safari's ("Debtor") Third Amended Chapter 13 Plan, dated February 13, 2024, on the basis that it fails to comply with §§ 1325 (a)(3) and (6).[1] The Trust also asserts dismissal is proper under § 1307(c)(1) because Debtor has unreasonably delayed her case to the prejudice of the Trust. For the reasons set forth below, the Court denies confirmation of Debtor's plan and dismisses the case.[2]

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the District Court on June 22, 2012. The contested matter

---

[1] Unless otherwise indicated, all statutory references refer to Title 11 of the United States Code (the "Bankruptcy Code").

[2] This Memorandum of Decision states the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 9014 and 7052.

before the Court constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L) and this Court has constitutional authority to enter a final judgment.

**BACKGROUND**

**A.  Litigation History between the Trust and Debtor**

The Trust holds a valid mortgage on Debtor's primary residence and is Debtor's only secured creditor.[3] Over three years prior to the commencement of this bankruptcy case, on September 3, 2019, the Trust initiated foreclosure proceedings in Addison County (Docket No. 179-9-19 Ancv) (the "Foreclosure Action").[4] In the Foreclosure Action, Debtor stipulated to a judgment of foreclosure which was entered on October 14, 2022.[5] Approximately 60 days after the Vermont Superior Court issued a Certificate of Non-Redemption and just days after the Trust filed a writ of possession, Debtor commenced this bankruptcy case.[6] Debtor testified she does not dispute she owes the Trust at least $297,143.79.

**B.  The Bankruptcy Process and Evolution of Plan Proposals and Schedules**

On June 14, 2023, Debtor commenced this case and proposed a Chapter 13 plan.[7]  Debtor later withdrew the original plan which called for monthly payment in the amount of $1,350 to the Trust.[8] On July 31, 2023, Debtor filed amended schedules, disclosing a retirement account in the amount of $69,000 and identifying two unsecured creditors for the first time.[9] The omitted creditors include a student loan lender, with a claim in the approximate amount of $52,000 and a credit card with a $134.88 balance.[10]

After multiple meetings of creditors and a Rule 2004 examination, the Trust filed a Motion to Dismiss the case under § 1307(c) based upon unreasonable delay that is prejudicial to the Trust and Debtor's failure to timely file a plan.[11] Despite the acknowledgement during the October 17, 2023 hearing that Debtor needed to file an amended plan, as of November 14, 2023 when the Motion to Dismiss was filed, Debtor had not yet filed an amended plan or operating reports[12] and

---

[3] *See* Claim 5-2 and doc. # 1.
[4] *See* doc. # 43.
[5] *See* doc. # 68-1.
[6] *See* docs. # 43.
[7] *See* docs. # 1 and 2.
[8] Debtor withdrew the original plan at a hearing on October 17, 2023.
[9] *See* doc. # 24.
[10] *Id.* While the amendment also added a claim held by "CACH, LLC/Resurgent Capital Services" after Debtor objected to the claim, the Court disallowed it (doc. # 39).
[11] *See* doc. # 43.
[12] The Court entered an Order Concerning Chapter 13 debtor Operating a Business on June 15, 2023 (doc. # 5)

had continued her confirmation hearing multiple times to allow additional time for discovery to take place.

On December 5, 2023, approximately one hour before the hearing on the Trust's Motion to Dismiss and continued confirmation hearing, Debtor filed a series of Operating Reports[13] and amended Schedules I and J.[14] At the hearing, when asked about the delay, Debtor claimed that she could not determine the arrearage amount owed under the Trust's mortgage, despite her stipulation to the arrearage in the stipulated foreclosure judgment. The Court found this explanation less than credible. While the Court denied the Motion to Dismiss without prejudice on procedural grounds, the Court entered a Scheduling Order setting forth deadlines for the filing of compliant operating reports under the Operating Order and an amended plan.[15] The Scheduling Order also set a show cause hearing as to why the case should not be dismissed for Debtor's failure to meet her responsibilities under Chapter 13, including a failure to timely file operating reports under the Operating Order, unreasonable delay, and failure to timely file a plan under § 1321.[16]

On December 18, 2023, Debtor filed a Second Amended Plan, in which she proposed to make monthly payments in the amount of $3,138.61 for 24 months, with a lump sum payment of $47,200 from the "sale of the building or building lot" by June 2025 with the balance of the Trust's mortgage to be paid in full, outside the Plan.[17] The Trust objected to the Second Amended Plan as noncompliant with §§ 1322(b)(2) or (b)(5).[18] Further, the amended schedules reflected net monthly income of $1,559.27 and did not include plan payments; the Second Amended Plan was not feasible.[19] At the confirmation hearing on February 6, 2024, the Court denied confirmation.

On February 7, 2024, the Court entered another Scheduling Order directing Debtor to file a third amended plan.[20] On February 13, 2024, Debtor filed a Third Amended Plan, which shortened the plan period to 12 months with monthly payments in the amount of $1,550.00, with no monthly payments on the arrearage.[21] As the plan presently before the Court, the Court will refer to the Third Amended Plan (doc. # 80) simply as the "Plan." The Plan also provides for a

---

[13] Docs. ## 48-53.

[14] Docs. ## 54 and 55.

[15] Doc. # 57.

[16] *Id.*

[17] Doc. # 66.

[18] Doc. # 72.

[19] *Id.*

[20] Doc. # 74.

[21] It is important to note that Debtor filed two versions of a Third Amended Plan on February 13, 2024. The first version (doc. # 78) was withdrawn. The Third Amended Plan before the Court is on the docket at ECF # 80.

lump sum:

> $48,024.46 shall be paid on or before June, 2024, to pay off the arrearage and the balance due under the Plan by a withdrawal from the IRA which she [Debtor] was not aware of when the case was initially filed.[22]
>
> …
>
> Debtor will be curing the arrearage by a withdrawal from an IRA on or before June 30, 2024. The payoff under the Plan includes the arrearage as of June, 2023. Debtor has been making the full monthly payments under the Plan since then, The total arrearage is $42,601.88.
>
> Upon completion of the Plan, Debtor will make the payments directly to the mortgagee and will pay off the balance due by the date the Note matures. The balance due on the mortgage when the note matures shall be paid in full from either the sale of the real estate outside the Plan or the refinancing of the property.
>
> In the event that the sale does not occur or the arrearage is not cured by June 30, 2024, Debtor will consent to Relief from Stay.[23]

Debtor proposes to retain the property for a period of over three years, at the conclusion of which she would either sell or refinance the property. The Plan provides no details concerning the sale or refinancing of the property. By its terms, the Trust's mortgage matures on May 1, 2027.[24] No sale or refinancing is presently in prospect, despite the Debtor's prior iterations of the Plan.

On March 5, 2024, the Trust opposed confirmation on the bases that the Plan violates §§ 1322(b)(2) and (5) by failing to maintain payments during the pendency of the case and § 1325 because the Plan is neither feasible nor proposed in good faith.[25] In support of its position, the Trust set forth in detail that the Debtor ignored court orders, repeatedly amended her schedules and plans which unreasonably delayed the case to the prejudice of the only secured creditor which has not consented to its treatment under any iteration of a plan.

The Court held an evidentiary confirmation hearing on the Plan. After submission of post-hearing briefing, the matter is fully submitted.

## DISCUSSION

A court shall confirm a Chapter 13 plan if it meets all the confirmation requirements of

---

[22] Doc. # 80 at § 2.4.
[23] Doc. # 80 at § 8.1.
[24] Claim 5-1 Ex. A at 1.
[25] Docs. ## 84 and 85.

§1325(a) and complies with the rest of the Code.[26] As the Plan proponent, Debtor bears the burden to prove that each of the statutory criteria for confirmation is met.[27] Section 1325(a) sets out nine requirements that must be satisfied to confirm a Chapter 13 plan. When an objection is filed, "the burden of proof at confirmation of a chapter 13 plan is a shifting one."[28] The party objecting to the plan bears the initial burden of presenting some evidence to support its position and, if satisfied, the burden shifts to the debtor to prove by a preponderance of the evidence that the requirements of § 1325 have been met.[29]

The Trust asserts confirmation must be denied because: (1) Debtor has not demonstrated the Plan complies with Chapter 13; (2) Debtor has not demonstrated she can perform under the Plan; and (3) the Plan has not been proposed in good faith.[30] The Trust further contends that Debtor's case should be dismissed under §§ 1307(c)(1) and (c)(5). At the outset, the Court finds the Trust has met its initial burden and set forth sufficient evidence to support its objections. The burden therefore shifts to the Debtor to prove by a preponderance of the evidence that the requirements of § 1325 have been met.

### A.      The Plan Does Not Comply with Chapter 13.

The Trust argues the Plan fails to comply with Chapter 13 in multiple respects. Under § 1322 (b)(2) and (5), the Plan impermissibly modifies the Trust's security interest in Debtor's residence by failing to cure her default within a reasonable time and maintain payments due under the mortgage while the case is pending. The Trust further asserts the Plan violates § 1325 in that it is neither feasible nor proposed in good faith.[31] The Court will address each in turn.

### 1.      The Plan Does Not Cure Debtor's Default Within a Reasonable Time.

The Trust's rights as a holder of a claim secured only by a security interest in real property used as the principal residence of Debtor may not be modified by the Plan,[32] except as otherwise

---

[26] § 1325(a)(2).

[27] *See In re Higley*, 539 B.R. 445, 450 (Bankr. D. Vt. 2015); *see also In re Lessman*, 159 B.R. 137 (Bankr. S.D.N.Y. 1993).

[28] *In re Powers,* 554 B.R. 41, 55 (Bankr. N.D.N.Y. 2016) (citing *McKinney v. McKinney (In re McKinney),* 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014).

[29] *Id.*

[30] *See* §§ 1325(a)(1), (a)(3); and (a)(6).

[31] There are additional issues that could be raised with the plan proposed by Debtor, including but not limited to, the treatment of her student loans under the Plan and whether it discriminates unfairly. The Court need not address this issue as other issues preclude confirmation.

[32] *See* § 1322(b)(2); *see also In re Galaske*, 2011 WL 5598356, *1 (Bankr. D. Vt. 2011). Debtor does not dispute that the Trust's claim is secured only by real property and that the property is her principal residence. Thus, § 1322(b)(2) applies. *See In re Moore*, 441 B.R. 732, 739-741 (Bankr. N.D.N.Y. 2010).

provided in § 1322.[33] Section 1322(b)(5) addresses the cure of pre-petition arrears for a secured claim that matures after the Plan is completed.[34] That section provides that Debtor may cure any default within a reasonable time and maintain payments due while the case is pending. The Plan proposes payments through the Trustee for only 12 months, after which Debtor will make a lump sum payment to cure the pre-petition arrearages by June 30, 2024. The Plan further provides that Debtor will continue to make regular monthly payments "outside" the Plan until either a sale and/or refinancing occurs to pay off the claim when it matures on June 1, 2027.

Under the facts and circumstances of this case, the Plan fails to cure the default by paying arrears within a reasonable time contrary to § 1322(b)(5). As set forth by the Trust and uncontroverted by Debtor, Debtor filed for bankruptcy protection in month 72 of the mortgage, at which time she was late on 42 payments, or more than half of the mortgage payments; hence, the Foreclosure Action.[35] Debtor stipulated to a judgment of foreclosure which was entered on September 23, 2022.[36] No payments have been made on the arrears during the pendency of the case. Rather, the Plan proposes to pay the arrears one year *after* Debtor commenced her bankruptcy case and approximately 21 months after she agreed to the amount of arrears.[37]

The Trustee and the Trust disagree as to whether the payments made outside the Plan while Debtor retains the property (after the June 2024 lump sum payment and before the balance is paid through either sale or refinance) constitute maintenance payments "under the Plan" such that they constitute maintenance of payments while the case is pending. Section 1322 refers to maintenance payments "while the case is pending," with no reference to "under the Plan." In this district, debtors who are behind on their mortgage payments at the time their case is filed, must file a Conduit Mortgage Payment Plan unless they seek a Waiver Order.[38] The Trustee asserts that Debtor's failure to maintain conduit mortgage payments is a distinction without a difference: "At the end of the Plan, if all payments are made, the mortgage will be brought current – the goal of the conduit

---

[33] *See* § 1322(b)(3) and (5); §1322(c).

[34] Neither Debtor nor the Trust argues that the note matures within the timeframe of the Plan, despite the Plan's provisions relating to a sale or refinance of the property to satisfy the note on maturation.

[35] *See* doc. # 84

[36] *See* doc. # 68-1.

[37] Debtor first listed the IRA funds in her schedules on July 31, 2023 (doc. # 24). However, Debtor's first and second amended plans proposed to pay the arrearage through a sale of the property, not with IRA funds. Despite this proposal, Debtor took no concrete steps to sell the property. Only the plan currently before the Court proposes to use IRA funds to pay the arrearage. While this decision was under advisement, Debtor filed a Status Report (doc. # 96) to notify the Court that the proposed arrearage payment was tendered to the Trustee. The tender does not affect the Court's analysis.

[38] Vt. LBR 3015-6.

mortgage payment plan."[39] The Trust points to the Plan and its calculation of the Trustee's commission to support its position that the Plan fails to include maintenance payments.[40] Debtor did not seek a Waiver Order from this Court's Local Rule which requires a Delinquent debtor to make Conduit Mortgage Payments through the Plan to be disbursed by the Trustee.[41] Accordingly, the Plan fails to comply with the local rules of this Court and does not provide the oversight and involvement of the Trustee which is inherent under a Conduit Mortgage Payment Plan.

Even if the Court were to find that the Plan complies with § 1322, which it does not, the Court must still determine whether Debtor will be able to comply with the Plan and whether the Plan has been proposed in good faith under § 1325.[42]

**2.      Debtor failed to establish she can comply with the Plan.**

Under § 1325(a)(6), the Court must determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." It is Debtor's burden to prove feasibility by demonstrating her ability to make all plan payments.[43] This Court must make a factual determination as to a plan's "reasonable likelihood of success."[44]  In other words, "[t]he bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan."[45]

The Trust asserts the Plan lacks feasibility because the Debtor has failed to establish how Debtor proposes to make monthly mortgage payments, how a sale or refinance of the property would occur, or how Debtor will address the maturation of the mortgage.[46] The Trust further argues that a feasible plan would include specific details describing how Debtor would make payments, sell the property, or refinance her mortgage.[47]

**a.      Monthly Payments under the Plan**

The Plan proposes to make payments of $1,550.00 per month for 12 months in addition to a lump sum payment. The Plan provides: "48,024.64 shall be paid on or before June, 2024 to pay off the arrearage and the balance due under the Plan by a withdrawal from the IRA which she

---

[39] Doc. # 90.
[40] Doc. # 91.
[41] *See* Vt. LBR 3015-6.
[42] *See* § 1325(a)(1), (3), and (6).
[43] *See In re Jensen,* 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010).
[44] *First Nat'l Bank of Boston v. Fantasia (In re Fantasia),* 211 B.R. 420, 421 (1st Cir. BAP 1997).
[45] *Id.*
[46] Doc. # 84 at 4-5.
[47] *Id.* at 5.

[Debtor] was not aware of when the case was initially filed."[48] Page one of the Plan states that the arrearage will be paid by June 30, 2024. Section 8 of the Plan provides that upon completion of the Plan, Debtor will make payments directly to the Trust and pay off the balance due by the date the Note, secured by the mortgage, matures from either a sale or refinancing. The maturity date is May 1, 2027.

With respect to her monthly income, Debtor's third amended schedules increased her gross monthly income to $4,182.65 while reducing her rental income to $775.00, leaving her net monthly income unchanged from her initial schedules at $1,559.90.[49] Debtor's fourth amended schedules increased Debtor's rental income to $1,100.00 and her overall net monthly income to $1,646.27.[50] Debtor's scheduled rental income has ranged from $1,350.00 per month, in her first schedules, to $775.00 per month in her third amended schedules, to $1,100.00 per month in her fourth amended schedules.[51] Debtor was unable to explain the variation, and Debtor's operating reports do not match her rental income on her schedules.[52]

None of Debtor's filed Schedules I, at the commencement of the case or the various amendments, disclose an anticipated increase or decrease in her income. The latest amended schedules I and J only allow a buffer of approximately $300.00 once plan payments are made.[53]

Debtor argues the Plan is feasible because she has made all plan payments since the beginning of the case and the Plan provides for the full payment of the Trust's claim by its maturation date.[54] However, Debtor testified that since the beginning of the case, she has withdrawn over $5,000.00 from her savings account to meet her expenses and has received monetary gifts from friends in the amount of $3,000.00. Although Debtor testified that the gifts were not used for her expenses, the Debtor offered no corroborating evidence to demonstrate how

---

[48] *See* doc. #80 at § 2.4.
[49] Doc. # 55 at 2.
[50] Doc. # 86 at 4.
[51] Docs. ## 1, 55, 86.
[52] *See infra* at 4. The Debtor's 2022 tax return reflects $1,228.00 as net rental income for the entire calendar year (doc. # 43-2).
[53] Doc. # 86.
[54] *See* Doc. # 80 at 5. The plan says "[u]pon completion of the Plan, Debtor will make the payments directly to the mortgagee and will pay off the balance due by the date the Note matures." As explained *infra*, Debtor's schedules are unreliable, making difficult not only the means test calculation, but the determination of the commitment period under § 1325(b), and thus whether the balloon payment falls during the pendency of the Plan. If the commitment period is three years, then the maturation date falls after the Plan ends; if the commitment period is five years, then the maturation date falls squarely within the Plan period. However, the Court need not decide any of these issues because the Plan itself proposes to "pay off the balance due by the date the Note matures."

those monetary gifts were actually used. At the time of filing, Debtor disclosed savings in the amount of $14,356.00. At the time of the hearing, Debtor testified the balance in the account was approximately $9,000.00. Debtor further testified that because she is paid on a commission basis, her income fluctuates and she has used the money in her savings account to pay expenses. Thus, her monthly income has been insufficient to fund the Plan and her living expenses.

Although Debtor testified that the amount of her income in the latest amended schedules is an average, the operating reports filed by the Debtor do not reflect her employment income and she offered no independent evidence on the actual amount of her earnings.[55] Schedule I also lists rental income in the monthly amount of $1,100.00 while most operating reports filed with the Court consistently demonstrate rental income of only $775.00.[56] When questioned about the tight nature of her income and expenses, Debtor testified that she could use the money in her savings as a buffer and that she had funds that she could liquidate.[57] During her testimony, Debtor referred to a fund in a Schwab account in her mother's name bequeathed by her mother. However, no such fund or account is identified in Debtor's schedules and Debtor produced no corroborating evidence to support her testimony that she has sufficient funds to make the proposed plan payments while continuing to pay her living expenses.

Based upon the evidence before the Court, Debtor failed to establish a credible basis that she can support the monthly mortgage payments as set forth in the Plan.[58] The Plan also calls for monthly mortgage payments to be made to the Trust directly upon completion of the 12 payments made under the Plan and will pay the balance on the date the note matures. Debtor provided no evidence detailing how payments will be made "outside the Plan" or when those payments will begin.[59] Debtor has failed to demonstrate an ability to make payments under the Plan.

**b. Sale of Debtor's residence.**

Debtor proposes to fund the payment of the balance of the mortgage by May 1, 2027, through a potential sale of the real estate. An earlier version of the Plan provided for the subdivision

---

[55] A component of Debtor's income includes commissions, although the Court has no evidence before it of what percentage of her income is commission dependent. Debtor testified she was unemployed for an extended period from late 2019 to early 2022, and has only recently gained stable employment.

[56] See docs. ##50, 51, 53, 76, and 77.

[57] The balance in the account would be insufficient to fully fund the proposed plan absent a sale or refinance.

[58] While Debtor testified she can liquidate funds, the balance of the savings account is not infinite and she presented no evidence to support consideration of the so-called "Schwab account." As that account is not listed with particularity on Debtor's schedules, it is not clear what type of interest she claims, might be entitled to, or the value.

[59] Understandably, the Trust is suspect of such payments given Debtor's employment and loan payment history.

and potential sale of the building or "building lot."[60]  The Court may find a plan feasible if it is based on a future event, such as a sale of property, so long as the sale appears reasonable.[61] Generally, courts view a sale plan with caution.[62] This Court's Local Rules require sale plans to meet specific requirements for confirmation: (1) provide sale will close within one year of confirmation; (2) identify the property to be sold, the estimated sales price and the amount to be paid into the plan from the sale; and (3) provide an alternative form of relief for any creditor with an interest in the property.[63]

The Plan, to the extent it is premised on a sale, does not include details about a sale sufficient for confirmation.[64] The Plan simply provides: "[t]he balance due on the mortgage when the note matures shall be paid in full from either the sale of the real estate outside the Plan or the refinancing of the property."[65] The maturity date is not within one year of confirmation; thus, the Plan fails to provide for the closing of a sale within one year of confirmation. It is not clear which property will be sold—whether the entire property or a portion, i.e., "the building lot." Debtor has not retained a real estate broker or sought a subdivision. Debtor could not testify whether a sale was a realistic possibility or whether the property could be sold for an amount that would satisfy the mortgage. Debtor offered no evidence to support the $600,000 value of the property set forth in her schedules and acknowledged she has no basis for that value while the tax assessment for the property is $290,000.[66] The Plan lacks any indication of whether Debtor intends to list the property for sale or the listing amount.[67] Debtor failed to demonstrate that the Plan is feasible based upon a sale of the real estate.

### c. Refinance of the mortgage

When a plan proposes to pay the mortgage upon maturation in a balloon payment, the

---

[60] Doc. # 66.

[61] *In re Nardini*, 2015 WL 9438292, *3 (Bankr. D. Vt. 2015) (citing *In re Turner*, 207 B.R. 373, 376 (B.A.P. 2d Cir. 1997); *In re Erickson*, 176 B.R. 753, 756 (Bankr. E.D. Pa. 1995)).

[62] *See Turner*, 207 B.R. at 376; *see also In re Lindsey*, 183 B.R. 624, 627 n. 4 (Bankr. D. Idaho 1995) (collecting cases).

[63] *See* Vt. LBR 3015-1(e). Fed. R. Bankr. P. 9029 authorizes the Court "to make and amend rules of practice and procedure which are consistent with – but not duplicative of – Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms." Local rules "have the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191, 130 S. Ct. 705, 175 L.Ed.2d 657 (2010) (citing *Weil v. Neary*, 278 U.S. 160, 169, 49 S. Ct. 144, 73 L.Ed. 243 (1929)).

[64] Doc. # 84 at 4.

[65] Doc. # 80 at 5.

[66] The property appraised for $365,000 in March 2020. Doc. # 84 at 4. Debtor believes the property has the potential for a subdivision, but she has taken no concrete steps to subdivide the property.

[67] Doc. # 84 at 5.

Debtor must have a feasible prospect of refinancing the debt at or before maturation.[68] In order to find reasonable probability of making a balloon payment, the Court must base its determination "on objective facts, not mere wishful thinking or pipe dreams."[69]

Debtor presented no objective facts that she has a reasonable probability of making a balloon payment to the Trust upon maturation of the note. Debtor has taken no steps toward refinancing. Even if she had, her current income levels and the regular monthly mortgage payment the Plan requires to be paid between curing the arrearage and the balloon payment, is unlikely to support refinancing as a possibility, much less a probability. Debtor has failed to establish that she is likely to be able to comply with this provision of the Plan.

### 3. The Plan has not been proposed in good faith.

To determine whether Debtor has complied with § 1325(a)(3) by proposing the plan in good faith, the Court must consider the totality of the circumstances on a case-by-case basis.[70] The Second Circuit provides guidance for the Court's review of Debtor's intentions in proposing the Plan under § 1325(a)(3): "to ascertain whether a plan was proposed in good faith, a bankruptcy court must determine 'whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.'"[71] In essence, the Court must assess whether the filing was fundamentally fair and complies with the Bankruptcy Code's rehabilitative purpose of affording a fresh start to an honest but unfortunate debtor.[72] "[W]hile 'good faith' is not statutorily defined, courts have held that '[a] debtor acts in 'good faith' when [he or] she demonstrates a 'sound and proper motive for seeking the protection of Chapter 13.' "[73]

Denying a debtor the relief available under the Bankruptcy Code based on a lack of good faith is a narrow doctrine.[74] As Judge Eric L. Frank explained: "Whether at the initial filing stage

---

[68] *In re Krus*, 582 B.R. 218, 222 (W.D. Wis. 2018); *see also In re Wagner*, 259 B.R. 694, 701 (B.A.P. 8th Cir. 2001).

[69] *In re Costello*, 2011 WL 2712970, *2 (N.D. Iowa 2011) (citing *In re Lockard*, 234 B.R. 484, 492 (Bankr. D. Maine 1999).

[70] *In re French*, 2003 WL 21288644 at *4 (Bankr. D. Vt. 2003).

[71] *Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865, 868 (2d Cir. 1983) (quoting *In re Goeb*, 675 F.2d 1386, 1389-91 (9th Cir. 1982)); *see also, In re Tcherneva*, 638 B.R. 676, 687 (Bankr. E.D.N.Y. 2022).

[72] *Powers*, 554 B.R. at 55-56 (applying totality of circumstances tests for review under section 1325(a)(3) and analysis of motivation and purpose for review under section 1325(a)(7)); *see In re Roby*, 649 B.R. 583, 594 (Bankr. M.D. Ala. 2023) (debtors with a greedy and unworthy purpose or perpetrating a malevolent scheme are not proceeding in good faith).

[73] *Powers*, 554 B.R. at 55-56 (quoting *Henri v. Wheeler (In re Wheeler)*, 511 B.R. 240, 250 (Bankr. N.D.N.Y. 2014) (citing *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010)).

[74] *In re Ames*, Case No. 21-12125, 2022 WL 2195469 at *9, 2022 Bankr. LEXIS 1715 at *21 (Bankr. E.D. Pa. June.

or at confirmation, a finding of a lack of good faith serves as a general bar to the relief the Bankruptcy Code offers. In these contexts, courts generally have agreed that the good faith doctrine is a narrow one.'"[75]  As a result,

> [S]everal courts have recognized that a robust application of the good faith doctrine creates a risk that the court's analysis will lapse into an inquiry, that may clothe subjective moral judgments with the force of law. Further, a broad application of the good faith requirement also would create an undue risk of judicial usurpation of the legislative power to determine the scope of and eligibility for [bankruptcy] relief. Consequently, denial of bankruptcy relief based on a lack of good faith should be confined carefully and is generally utilized only in egregious cases.[76]

With these principles in mind, the Court considers the good faith objection to confirmation in this case.

Considering the timing of her bankruptcy filing, there is no question Debtor filed this case to thwart the foreclosure process. While insufficient alone to find the Plan was not proposed in good faith, the totality of the circumstances in this case support a finding that Debtor has not proposed the Plan in good faith.

Throughout the course of this case, Debtor has done the bare minimum to address the issues before the Court, often at the last moment prior to hearings and generally in a responsive posture to Court orders or the Trust's motions, not proactive in pursuit of a confirmable plan. Each amendment to schedules followed the Trust's objections or motions and inexplicably found new income or assets, in an apparent manipulation of the facts. When questioned about the amendments, Debtor incredibly testified she had not read the filed documents or understood them prior to signing. While this is Debtor's first bankruptcy filing, she is a highly educated person who holds a doctorate degree. Based upon her testimony, the Court infers it is highly unlikely she signed documents without questioning or ensuring that she understood the nature of the documents being signed. Debtor failed to file operating reports for several months during the pendency of the case, and the monthly income does not correlate to the amended schedules.[77] No corroborating evidence

---

17, 2022).

[75] *Id.* at 22 (quotations omitted).

[76] *Id.* (quotations and citations omitted).

[77] Debtor only filed operating reports (docs. ## 48 to 53) the morning of the December 5, 2023 hearing, after the Trust included the failure as a basis for dismissal in its Motion to Dismiss. These operating reports were not attested to or signed by Debtor, and did not include any reports for Big Yellow House Cakes LLC or Maple Street Strategies LLC, both of which were listed on her schedules. Debtor filed amended operating reports addressing these errors only after the Court directed her to do so (doc. # 57).

has been produced to support either income. Considered apart, any one of these facts may not preclude a finding of good faith; taken together, the totality of the circumstances supports Debtor unfairly manipulated the Bankruptcy Code and did not propose the Plan in good faith.

**B.     Cause exists to support dismissal.**

Section 1307, which governs conversion or dismissal of Chapter 13 cases, provides that the court, on request of a party in interest and after notice and a hearing, may dismiss a case for cause, and further provides a non-exhaustive list of circumstances that constitute "cause."[78] The Court finds that at least two of the enumerated circumstances apply here. Under subsection (c)(1), the Court may dismiss a Chapter 13 case where there has been "unreasonable delay by the debtor that is prejudicial to creditors." Additionally, subsection (c)(5) provides that the Court may dismiss a Chapter 13 case in the event of "denial of a confirmation of a plan under [11 U.S.C. § 1325]."

With respect to dismissal under subsection (c)(1), this case has been pending for over a year, and during that time Debtor has made no meaningful progress toward the filing of a feasible and confirmable plan. While arguably some progress has been made, it has been inherently suspect and based upon assets and accounts that were either not initially identified or not disclosed at all in Debtor's schedules. The Trust asserts Debtor's schedules are inaccurate.

"This Court considers allegations of inaccurate schedules to be very serious. The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees, and creditors can rely."[79] When a debtor files their schedules, they must also sign Official Form 106Dec, which says: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct."[80] "It is always the case that a debtor has a duty to prepare schedules carefully, completely, and accurately."[81]

Here, the Trust argues that Debtor "filed incomplete schedules omitting significant student

---

[78] § 1307(c); *In re Stevenson*, 583 B.R. 573, 579 (B.A.P. 1st Cir. 2018). "Upon a showing of cause, the Court may dismiss a Chapter 13 case." *In re Clark*, 2024 WL 409494 (Bankr. D. Conn. Feb. 2, 2024). The Court may dismiss a case even without a motion from a party in interest under § 105(a) ("The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). The Court has previously issued an Order to Show Cause why the case should not be dismissed (doc. # 57) and the Trust has consistently requested dismissal in its filings (*see, e.g.* docs. ## 84 at 6; doc. # 91 at 5.)

[79] *Ladieu*, 2015 WL 3503941 at *9 (Bankr. D. Vt. 2015) (internal citations and quotations omitted).

[80] Official Form 106Dec is required whenever a debtor files schedules. *See* Fed. R. Bankr. P. 1009; *see also* Vt. LBR 1009-1(a).

[81] *Ladieu*, 2015 WL 3503941 at *9 (citing *Edwards*, 2003 WL 22016324).

loan debt and an IRA of about $70,000."[82] Debtor testified that she did not schedule either her student loan debt or IRA because she was not aware of them. She provided no other explanation for their omission. Debtor's response shows a lack of care in preparing her schedules and calls into question whether the Court or creditors can rely upon them. Additionally, Debtor's scheduling of three different amounts for her monthly rental income over three different sets of schedules, none of which match her operating reports, supports their inaccuracy.[83]

A Chapter 13 debtor has an obligation to seek to confirm a plan as expeditiously as possible.[84] Thus, dismissal is proper for "unreasonable delay" where any "further delay by the debtor would only prejudice creditors and make the feasibility of any plan unlikely."[85] Regardless of the purpose for the delay, there is a "tipping point in every case" where it becomes "unwarranted and unjustified."[86] Debtor's case has been pending since June 14, 2023, an "exceptionally long time" to continue without a confirmed plan.[87]

The tipping point has come for this case. The Debtor has done little, if anything, to address the multitude of issues identified in each of the Trust's objections and while Debtor has continued to file amended schedules and plans wrought with contradictory positions, the Trust has received no payments on the pre-petition mortgage arrearage.[88] Any further delay by Debtor is unreasonable and prejudicial to the Trust, constituting further cause for dismissal under § 1307(c)(1).

Section 1307(c)(5) provides an additional ground for dismissal because the Plan (as with all earlier iterations) is infeasible and unconfirmable. "Subsection (c)(5), allowing a court to dismiss a case where the plan is not confirmable, references Bankruptcy Code § 1325(a)(6), '[b]y far the most important criterion for the confirmation of a chapter 13 plan.'"[89] Under Section

---

[82] Doc. # 68 at 6.

[83] *Compare* doc. # 1 at 26 (listing $1,350 in monthly rental income) *with* doc. # 55 at 2 (listing $775 in monthly rental income); *see also* doc. # 86 (listing $1,100 in monthly rental income); *but see, e.g*, docs. ## 62-65 (operating reports listing no more than $775 in monthly rental income).

[84] *See In re Abel*, 2001 WL 36160133, *7 (Bankr. D. Vt. 2001) (citing *In re Nicholes*, 184 B.R. 82, 87 (B.A.P. 9th Cir. 1995); *In re Pearson*, 773 F.2d 751, 753 (6th Cir. 1985)).

[85] *In re Burgos*, 476 B.R. 107, 111 (Bankr. S.D.N.Y. 2012).

[86] *In re Malek*, 591 B.R. 420, 431 (Bankr. N.D. Cal. 2018).

[87] *See In re Addams*, 564 B.R. 458, 466-467 (Bankr. E.D.N.Y. 2017) (dismissing case for cause after debtor failed to confirm a plan despite having 15 months); *see also In re Pruitt*, 203 B.R. 745, 745-746 (Bankr. N.D. Okla. 1996) (dismissing Chapter 13 case for debtor's unreasonable delay due to inability or unwillingness to propose a confirmable plan after 6 months); *see also Clark*, 2024 WL 409494 (dismissing case for cause and imposing a two-year filing bar for debtor's bad faith and unreasonable delay of 6 months).

[88] While Debtor filed a status report on June 28, 2024 to report that the arrearage amount had been wired to the Trustee (doc. # 96), as of the date of this decision, no arrearage has been paid to the Trust.

[89] *In re Jensen*, 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010) (*quoting* 9 COLLIER ON BANKRUPTCY ¶ 1325.07).

1325(a)(6), the Court must determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." In this case, Debtor has had a myriad of opportunities to demonstrate feasibility. Based upon the Court's finding that Debtor has failed to meet her burden proving feasibility, the Court finds sufficient cause to dismiss this case pursuant to § 1307(c)(5).

### CONCLUSION

Based upon the foregoing, the Court denies confirmation of the Plan (doc. # 80) and finds dismissal is warranted under the totality of the circumstances of this case. A separate order will issue.

July 2, 2024                                         Heather Z. Cooper
Burlington, VT                                    United States Bankruptcy Judge