*Formatted for Electronic Distribution*     *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT



Filed & Entered
On Docket
08/23/2024

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Carol Marie Fenimore Safari,** | ) | **Case No. 23-10101** |
| | ) | **Chapter 13** |
| **Debtor.** | ) | |

*Appearances:*

| | |
|---|---|
| *Rebecca A. Rice, Esq.* | *John J. Kennelly, Esq.* |
| *Cohen & Rice, P.C.* | *Pratt, Vreeland, Kennelly,* |
| *Shrewsbury, Vermont* | *Martin & White, Ltd.* |
| *For the Debtor* | *Rutland, Vermont* |
| | *For the John and Teresa Fenimore* |
| | *Living Trust* |

*Jan M. Sensenich, Esq.*
*Norwich, Vermont*
*Chapter 13 Trustee*

### MEMORANDUM OF DECISION
### DENYING DEBTOR'S MOTION FOR A STAY PENDING APPEAL

Before the Court is Debtor's motion, pursuant to Bankruptcy Rule 8007, for a stay pending appeal[1] of this Court's Memorandum of Decision Denying Plan Confirmation and Dismissing Case[2] and accompanying Order.[3] Debtor argues she is entitled to a stay because she has a substantial possibility of success on appeal and will suffer irreparable harm if the Court denies a stay.[4] Additionally, Debtor asserts the granting of a stay will not substantially harm The John and Teresa Fenimore Living Trust (the "Trust"), secured creditor, and no public interest concerns are affected by the imposition of a stay.[5]

The Trust opposes the Motion, arguing the Debtor is unlikely to succeed in her appeal, will not suffer any irreparable injury without a stay, and has failed to show the granting of a stay is consistent with

---

[1] Doc. # 104. While Debtor relies upon Fed.R.Bankr.P. 8005 ("Election to Have an Appeal Heard by the District Court Instead of the BAP"), the Court infers from the substance of her papers that she is moving under Fed.R.Bankr.P. 8007.
[2] Doc. # 97.
[3] Doc. # 98.
[4] Doc. # 104-2.
[5] *Id.*

public interests.[6] The Trust also contends the granting of a stay will cause it to suffer significant and continuing loss, through further erosion of its secured status.

The Court held a hearing on July 26, 2024, at which Rebecca A. Rice, Esq. appeared on behalf of Debtor, John J. Kennelly, Esq. appeared on behalf of the Trust, and Jan M. Sensenich, Esq. appeared in his capacity as chapter 13 Trustee. At the hearing, additional issues were raised and accordingly, the Court allowed Debtor and the Trust an opportunity to file supplemental pleadings. As of August 13, 2024, the matter is fully submitted.

Based upon the record in this case, the Court finds Debtor has failed to establish the requisite elements for a stay pending appeal. Accordingly, Debtor's motion is denied.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. Debtor's motion for a stay pending appeal, and the Trust's objection to the motion, create a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A) and (L), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

The Trust holds a valid mortgage on Debtor's primary residence (the "Property") and is Debtor's only secured creditor.[7] Over three years prior to the commencement of this bankruptcy case, on September 3, 2019, the Trust initiated a foreclosure proceeding in Addison County (Docket No. 179-9-19 Ancv) (the "Foreclosure Action").[8] In the Foreclosure Action, Debtor stipulated to a judgment of foreclosure which was entered on October 14, 2022.[9] Approximately 60 days after the Vermont Superior Court issued a Certificate of Non-Redemption and just days after the Trust received a writ of possession, Debtor commenced this bankruptcy case on June 14, 2023.[10]

On November 14, 2023, the Trust filed a Motion to Dismiss the case for cause, primarily citing undue delay. At that time, Debtor's original proposed plan had been withdrawn, no substitute had been filed, and the information obtained in discovery (namely Debtor's tax returns) contradicted Debtor's Schedules I and J and Statement of Financial Affairs. (doc. # 43). While the Court denied the Motion to Dismiss on procedural grounds, the Trust continued to raise the delay in its subsequent pleadings.

---

[6] Doc. # 106.
[7] *See* Claim 5-2 and doc. # 1.
[8] *See* doc. # 43.
[9] *See* doc. # 68-1; Trust Exhibit 3.
[10] *See* doc. # 43.

2

Debtor proposed various Chapter 13 Plans which had different mechanisms for curing the pre-petition mortgage arrearage and amended her schedules from time to time. On March 12, 2024, the Court held an evidentiary confirmation hearing on the Third Amended Plan dated February 13, 2024 (the "Plan"),[11] at which Debtor, the Trust, and the Chapter 13 Trustee appeared, presented legal arguments, and introduced testimony and documentary evidence.

The Plan provides:

> $48,024.46 shall be paid on or before June, 2024, to pay off the arrearage and the balance due under the Plan by a withdrawal from the IRA which she [Debtor] was not aware of when the case was initially filed.[12]
>
> …
>
> Debtor will be curing the arrearage by a withdrawal from an IRA on or before June 30, 2024. The payoff under the Plan includes the arrearage as of June, 2023. Debtor has been making the full monthly payments under the Plan since then. The total arrearage is $42,601.88.
>
> Upon completion of the Plan, Debtor will make the payments directly to the mortgagee and will pay off the balance due by the date the Note matures. The balance due on the mortgage when the note matures shall be paid in full from either the sale of the real estate *outside the Plan* or the refinancing of the property.
>
> In the event that the sale does not occur or the arrearage is not cured by June 30, 2024, Debtor will consent to Relief from Stay.[13]

[emphasis added]. By the Plan terms, Debtor proposes to retain the Property for a period of over three years, at the conclusion of which she would either sell or refinance the Property. The Plan provides no details concerning the sale or refinancing of the Property. By its terms, the Trust's mortgage matures on May 1, 2027.[14] No sale or refinancing is presently in prospect, despite the Debtor's prior iterations of the Plan which called for a sale of all or a portion of the property securing the mortgage or a refinance of the mortgage.

The Trust objected to confirmation on the bases that the Plan violates §§ 1322(b)(2) and (5)[15] by failing to maintain payments during the pendency of the case and § 1325 because the Plan is neither feasible nor proposed in good faith.[16] In support of its position, the Trust set forth in detail how the Debtor ignored court orders, repeatedly amended her schedules and plans which unreasonably delayed the case to the

---

[11] *See* doc. # 80.
[12] Doc. # 80 at § 2.4.
[13] Doc. # 80 at § 8.1.
[14] Claim 5-1 Ex. A at 1.
[15] Unless otherwise indicated, all statutory references refer to Title 11 of the United States Code (the "Bankruptcy Code").
[16] Docs. ## 84 and 85.

3

prejudice of the only secured creditor which has not consented to its treatment under any iteration of a plan. The Trust asserted dismissal was proper.

At the conclusion of the evidentiary hearing, the Court granted the parties' request for post-hearing briefing. The Trust and Trustee submitted post-hearing briefs which detailed their respective positions with respect to payments under the Plan and whether the Code requirements under § 1322 to cure and maintain payments, while the case is pending, were satisfied.

On July 2, 2024, the Court issued a Memorandum of Decision Denying Confirmation and Dismissing Case and an accompanying order.[17] In its decision, the Court determined Debtor had failed to meet her burden demonstrating the statutory criteria for confirmation had been met.[18] Namely, (1) the Plan did not cure Debtor's pre-petition mortgage default within a reasonable time or maintain payments due while the case is pending under § 1322(b)(5) and thus, the Plan cannot be confirmed under § 1325(a)(1); (2) the Debtor failed to demonstrate that she would be able to make all payments under the Plan and comply with the Plan under § 1325(a)(6), especially since she testified she did not have the financial capacity to make payments under the Plan before the confirmation hearing; (3) the Plan lacked specificity on how Debtor proposed to make mortgage payments after the arrearage lump sum was made or how a sale or refinance of the property would occur upon maturation; and (4) the Plan had not been proposed in good faith in accordance with § 1325(a)(3).[19] The Court considered testimony provided, various statements and schedules filed during the case, and contradictory operating reports. Debtor provided no corroborating evidence to support her income, her ability to make mortgage payments during the pendency of the case, efforts to determine whether the property could sell for an amount sufficient to satisfy the mortgage upon maturation, or her ability to refinance the property.[20]

While the evidentiary issues were under advisement, Debtor unilaterally performed under the Plan despite it not having been confirmed.[21]

On July 16, 2024, Debtor filed a Notice of Appeal, appealing the Order Denying Confirmation and Dismissing Case.[22]

---

[17] *See* docs. ##97 and 98.
[18] Doc. # 98.
[19] *Id.*
[20] *Id.*
[21] Doc. # 96.
[22] Doc. # 101.

4

On July 19, 2024, Debtor filed an emergency motion for a stay pending appeal[23] (the "Stay Motion"), and the Trust filed an objection to that motion.[24] On July 26, 2024, the Court held a hearing on the Stay Motion, and considered the respective parties' positions. Debtor and the Trustee argued in support of the Stay Motion; the Trust argued in opposition to the Stay Motion. Debtor argued for the first time during the July 26, 2024 hearing that the Plan is only a twelve-month plan, despite its provisions that extend beyond twelve months, namely payments during the three-year gap and sale or refinance the property upon maturity of the Trust's note "outside the Plan."[25] Debtor never provided post-hearing briefing to address the payment issues raised by the Trust and the Trustee which involved timing and feasibility of the sale or refinance. Debtor submitted a statement of issues on appeal which more fully develop her position on appeal on July 30, 2024.[26] The Court deemed the matter fully submitted as of August 13, 2024.[27]

## DISCUSSION

The Bankruptcy Code provides that the filing of an appeal "does not stay any proceeding of the bankruptcy court . . . from which the appeal is taken, unless the respective bankruptcy court . . . in which the appeal is pending [] issues a stay of such proceeding pending the appeal."[28] The movant must file a motion seeking a stay under Federal Bankruptcy Rule 8007, which provides, in pertinent part, as follows:

> In General. Ordinarily, a party must move first in the bankruptcy court for the following relief:
> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
> (B) the approval of a bond or other security provided to obtain a stay of judgment;
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
> (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

Fed. R. Bankr. P. 8007(a)(1).

The decision of whether to grant a stay of an order pending appeal "lies within the sound discretion of the court."[29] "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead

---

[23] Doc. # 104.
[24] Doc. # 106.
[25] Likewise, Debtor never presented this interpretation during the March 12, 2024 confirmation hearing and the scope of evidence presented included the feasibility of a potential sale or refinance.
[26] Doc. # 109.
[27] Doc. # 111.
[28] *In re DuCharme*, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting 28 U.S.C. § 158(d)(2)(D)).
[29] *Nken v. Holder,* 556 U.S. 418, 433, 129 S.Ct. 1749 (2009); *In re Sabine Oil & Gas Corp.,* 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016); *see also Int'l Christian Broad., Inc. v. Koper (In re Koper)*, 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016); *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009).

an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."[30] As the moving party, Debtor bears the burden of showing she is entitled to a stay.[31] Debtor's burden is a "heavy one."[32]

The standard for obtaining a stay pending appeal "is well-established in this Circuit."[33] In deciding whether to issue a discretionary stay pending appeal of a bankruptcy court order, courts consider four factors: (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal; and (4) the public interests that may be affected.[34]

This Court determines a stay pending appeal through a balancing of the factors.[35] "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed."[36] "The Second Circuit has 'also noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that 'the more of one [factor] excuses less of the other.'"[37] Accordingly, this Court will examine the Debtors' arguments on each of the four factors in order of their importance in this case.

### A. Whether Debtor will Suffer Irreparable Injury Absent a Stay

A showing of probable irreparable harm is the "principal prerequisite" for the issuance of a stay pursuant to Rule 8007, and such harm "must be neither remote nor speculative, but actual and imminent."[38] Debtor argues that because the Property is Debtor's residence, she will suffer irreparable injury because she will be subject to losing her home through completion of the foreclosure process.[39] The Trust asserts that Debtor cannot claim to suffer irreparable injury if the foreclosure process completes because (1) Debtor stipulated to the Judgment and Decree of Foreclosure; and (2) Debtor proposes to sell the home in order to

---

[30] *Nken v. Holder*, 556 U.S. at 433.
[31] *See, e.g., id.* at 433-34 (ruling "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [this] discretion"); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995); *Int'l Christian Broad., Inc. v. Koper (In re Koper)*, 560 B.R. 68, 73 (Bankr. E.D.N.Y. 2016).
[32] *In re DJK Residential, LLC*, 2008 U.S. Dist. LEXIS 19801, *5 (S.D.N.Y. 2008) (*citing In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005)). *See also In re Barretta*, 560 B.R. 630, 632 (D. Conn. 2016); *Private Sanitation Ass'n,* 44 F.3d at 1084 ("A party seeking a stay of a lower court's order bears a difficult burden.").
[33] *Obuchowski v. Poulin (In re Stevens)*, 2001 Bankr. LEXIS 2189, *10 (Bankr. D. Vt. 2001).
[34] *(In re Koper)* 560 B.R. at 72 (*citing Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)).
[35] *In re Sabine Oil & Gas Corp.,* 548 B.R. at 681.
[36] *In re Adelphia Communs. Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007); *see also Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (reaching a determination "[a]fter weighing the four factors relevant to the grant of a stay").
[37] *In re DuCharme*, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting *World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).
[38] *In re Adelphia,* 361 B.R. at 347 (citations omitted).
[39] Doc. # 104-2.

pay the obligation upon maturation of the Trust's note.[40] In support of its opposition to the Motion to Stay, the Trust relies upon *In re Turner*, 207 B.R. 373 (BAP 2d Cir. 1997) to support denying a stay under these circumstances. In *Turner*, the Bankruptcy Appellate Panel held that debtors would not suffer irreparable harm, despite losing their home in the absence of a stay, because the debtors had withdrawn their objection to a foreclosure sale prior to filing bankruptcy and their Chapter 13 plan proposed to sell the home.[41] Because the debtors did not intend to stay in their home, there was no irreparable injury if they were forced to leave their home sooner rather than later.[42] The facts in *Turner* are similar to the facts before the Court. Debtor consented to the Judgment of Foreclosure prior to filing her bankruptcy case and her proposed chapter 13 plan proposes to either sell the Property or refinance it to satisfy the Trust's mortgage.[43]

"The fact that that [ ] property will be sold absent a stay does not automatically constitute irreparable harm."[44] Nonetheless, while this Court is not entirely convinced that Debtor will suffer irreparable harm if the foreclosure case proceeds based upon her consent to the Judgment of Foreclosure, the asserted harm may in fact be irreparable from Debtor's perspective[45] and therefore, the Court will weigh this factor in favor of Debtor's request for a stay. This finding alone, however, is not sufficient to warrant the granting of a stay pending appeal. The Court must weigh this against findings with respect to the other three factors.

### B. Whether the Trust will Suffer Substantial Injury if a Stay is Issued

When determining whether to grant a stay pending appeal, unlike the irreparable harm movant must demonstrate, the harm to non-movants need only be substantial, not irreparable, and a non-movant's ability to financially recover from a harm does not necessarily make that harm insubstantial.[46] Debtor asserts the Trust will not suffer substantial injury if a stay is issued because the Chapter 13 trustee is holding sufficient funds to cure the arrearage and make the July 2024 payment. Debtor further asserts she will pay the ongoing monthly payments to her counsel to either hold, or if authorized by the Court, disburse the payments to the Trust.[47] The Trust claims that it will suffer substantial injury based upon the delay after significant litigation in state court which resulted in the Stipulated Foreclosure Judgment.

When asked at the July 26, 2024 hearing about the Trust's injury based upon accruing interest and fees because Debtor's proposal does not apply payments to the outstanding amounts due, Debtor requested

---

[40] Doc. # 106.
[41] *Turner*, 207 B.R. at 376.
[42] *Id.*
[43] Debtor claims in her supplemental briefing that she never consented to a Judgment Order and decree of Foreclosure, but the record supports otherwise. *See* doc. # 68-1; Trust Exhibit 3.
[44] *In re Giambrone,* 600 B.R. 207, 213 (E.D.N.Y. 2019).
[45] *In re Simpson*, Case No. 18-10442, 2018 WL 1940378, *9-10 (Bankr. D. Vt. 2018).
[46] *Amazon.com, Inc. v. WDC Holdings LLC,* No. 1:20-CV-00484, 2020 WL 7680552, at *2 (E.D. Va. Sept. 4, 2020).
[47] Doc. # 104-2.

7

this Court, in essence, provide for payments to be made in accordance with the Plan which the Court determined could not be confirmed. Debtor did not address accruing interest or fees in her supplement briefing post-hearing. Debtor's proposal, in essence, concedes that if a stay pending appeal is granted, the Trust will suffer injury. The Court weighs this factor against a stay pending appeal.

### C. Substantial Possibility of Success on Appeal

"The 'substantial possibility of success' test is considered an intermediate level between 'possible" and 'probable' and is 'intended to eliminate frivolous appeals.'"[48] The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, "more of one excuses less of the other."[49] Debtor must establish she has at least a substantial possibility – though not a likelihood – of success on the merits of her appeal to prevail on this crucial factor.

In assessing whether Debtor has at least a substantial possibility of success on the merits, the standard by which the Court's Order Denying Confirmation and Dismissing Case will be reviewed is relevant. On appeal, a district court hearing an appeal from the bankruptcy court reviews the bankruptcy court's findings of fact under the "clearly erroneous" standard, while its conclusions of law are reviewed under the *de novo* standard.[50] Under *de novo* review, the district court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered.[51] By contrast, review for clear error is much more deferential to the bankruptcy court's findings. Clear error exists "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[52] While the lower court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. "To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must …strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish."[53] Particular deference is given to a bankruptcy court's findings on credibility.[54]

---

[48] *In re West End Realty Corp.,* 507 B.R. 496, 501 (Bankr.S.D.N.Y. 2014) (citing to *Country Squire*, 203 B.R. 182, 184 (2d Cir. BAP 1996)).
[49] *Mohammed v. Reno,* 309 F.3d at 101.
[50] *In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018).
[51] *In re Reilly,* 245 B.R. 768, 772 (2d Cir. BAP), *aff'd*, 242 F.3d 367 (2d Cir. 2000) ("A *de novo* review allows us to decide the issue as if no decision had been previously rendered…No deference is given to the Bankruptcy Court's decision.") (quoting *In re Miner,* 229 B.R. 561, 565 (2d Cir. BAP 1999)).
[52] *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.,* 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).
[53] *In re Reilly,* 245 B.R. at 772 (quoting *In re Miner,* 229 B.R. at 565).
[54] *In re Portaluppi,* 609 F.App'x 30, 31 (2d Cir. 2015) (citing *In re CBI Holding Co.,* 529 F.3d 432, 450 (2d Cir. 2008)).

In the Stay Motion, Debtor posits three grounds she alleges warrant reversal of the Court's Order Denying Confirmation and Dismissing Case and asserts she is entitled to a stay pending appeal because she is likely to succeed in her appeal. They are as follows: (1) deciding that the Debtor's actions constituted unreasonable delay which is prejudicial to creditors and grounds for dismissal under §1307(c)(1); (2) dismissing the case due to Debtor's failure to cure the arrearage outside the Plan earlier in the case; and (3) determining that payment in full of the arrearage within twelve months was an unreasonable delay.[55] At the July 26, 2024 hearing on the Stay Motion, counsel for Debtor was not sure that these were, in fact, the issues to be raised on appeal. Based on the Court's findings in the first instance, which found that the Plan was not confirmable under § 1325(a)(1), (3), and (6), and that the plain language of § 1325 is conjunctive, the Court provided Debtor an opportunity to argue how even if one of the findings was determined to be erroneous (specifically, the reasonable time related to findings under § 1325(a)(1) and that the Plan did not comply with § 1322 (b)(5)), that she had a substantial possibility of success on appeal. Debtor was to address all four elements in supplemental briefing.

Between the July 26 hearing and the due date for supplemental briefing, Debtor filed a Statement of Issues on Appeal.[56] Those issues are as follows:

> I. Does a chapter 13 plan, which proposes to cure the debtor's mortgage arrearage in full within twelve months of the start of payments, and within four months of the confirmation hearing, "not cure the debtor's default within a reasonable time"?

> II. Does the fact that the debtor had made all the required plan payments to the chapter 13 trustee prior to the court dismissing the case establish that the court's conclusion that "debtor has failed to demonstrate an ability to make payments under the plan" clearly erroneous?

> III. Was there an unreasonable delay by the debtor that was prejudicial to creditors when the debtor proposed a 12 month plan, which would fully pay each mortgage payment due to the mortgagee during the plan as well as fully pay the mortgage arrearage and either fully pay, or leave unimpaired all of her other creditors under which she fully performed prior to the Court dismissing her case?

> IV. Does a chapter 13 plan, which proposes to cure the debtor's mortgage arrearage in full within twelve months of the start of payments, and within four months of the confirmation hearing, indicate a lack of good faith in the filing of a chapter 13 case? [57]

---

[55] Doc. #104-2.
[56] Doc. # 109.
[57] *Id.*

9

In her supplemental briefing, Debtor did not brief the requisite elements for a stay pending appeal in reference to either the issues presented in the initial Motion to Stay or the distilled issues delineated in her Statement of Issues on Appeal.[58] Rather, Debtor claims this Court erroneously interpreted the Plan because she intended the Plan to be a 12-month plan. In addition, Debtor claims that with the benefit of hindsight and because Debtor made a lump sum payment after the evidentiary hearing and prior to the issuance of this Court's decision and order that the findings are rendered erroneous.[59] The Debtor's performance after the presentation of evidence does not cure Debtor's failure to provide sufficient evidence to support confirmation of the Plan. Nonetheless, the Court will address each issue in turn.

1. **Does a chapter 13 plan, which proposes to cure the debtor's mortgage arrearage in full within twelve months of the start of payments, and within four months of the confirmation hearing, "not cure the debtor's default within a reasonable time"?**

In the Memorandum of Decision Denying Confirmation and Dismissing Case, after evaluating the facts and circumstances of the case, the Court noted: "Even if the Court were to find that the Plan complies with § 1322, which it does not, the Court must still determine whether Debtor will be able to comply with the Plan and whether the Plan has been proposed in good faith under § 1325." (citing §§ 1325(a)(1), (3), and (6)). Section 1325(a) sets out nine requirements that must be satisfied to confirm a Chapter 13 plan, the first of which is the Plan complies with the provisions of chapter 13. By its plain language, § 1325(a) is conjunctive such that each of the nine requirements must be satisfied for a plan to be confirmed. The Court found multiple alternative grounds to deny confirmation of the plan. Even if the Debtor were to fully succeed on this issue, that success standing alone, would not warrant a reversal of the denial of confirmation to support a substantial possibility of success on appeal.

2. **Does the fact that the debtor had made all the required plan payments to the chapter 13 trustee prior to the court dismissing the case establish that the court's conclusion that "debtor has failed to demonstrate an ability to make payments under the plan" clearly erroneous?**

Under § 1325(a)(6), the Court must determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." It is Debtor's burden to prove feasibility by demonstrating her ability to make all plan payments.[60] The Court must make a factual determination as to a plan's "reasonable likelihood of success."[61] In other words, "[t]he bankruptcy court should be satisfied that the debtor has the

---

[58] Doc. # 110.
[59] *Id.*
[60] *See In re Jensen,* 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010).
[61] *First Nat'l Bank of Boston v. Fantasia (In re Fantasia),* 211 B.R. 420, 421 (1st Cir. BAP 1997).

10

present as well as the future financial capacity to comply with the terms of the plan."[62]

The Plan altered the debtor/creditor relationship between Debtor and the Trust in three ways: (1) Debtor would pay her pre-petition arrearages in a lump sum; (2) pay the Trust directly for three years; and (4) upon maturation of the mortgage, Debtor would either sell the Property *outside the Plan* or refinance. While Debtor paid the arrearage to the Trustee on or before June 30, 2024, Debtor had the burden of proof *at confirmation* to establish a credible basis that she could perform under the Plan. Subsequent performance does not excuse the absence of credible evidence or render the findings clearly erroneous.

The Court's denial of confirmation was based upon multiple alternative grounds under § 1325(a). Debtor has not demonstrated a substantial possibility of success on appeal.

3. **Was there an unreasonable delay by the debtor that was prejudicial to creditors when the debtor proposed a 12 month plan, which would fully pay each mortgage payment due to the mortgagee during the plan as well as fully pay the mortgage arrearage and either fully pay, or leave unimpaired all of her other creditors under which she fully performed prior to the Court dismissing her case?**

Section 1307, which governs conversion or dismissal of Chapter 13 cases, provides that the court, on request of a party in interest and after notice and a hearing, may dismiss a case for cause, and further provides a non-exhaustive list of circumstances that constitute "cause."[63] In the Court's Order Denying Confirmation and Dismissing Case, the Court found multiple alternative grounds to dismiss the case for "cause." In addition to the Court's findings under § 1307 (c)(1), based upon "unreasonable delay by the debtor that is prejudicial to creditors," the Court also found independent grounds existed under § 1307(c)(5) based upon "denial of a confirmation of a plan under [11 U.S.C. § 1325]." Debtor does not challenge the independent basis for dismissal for cause under § 1307(c)(5).

In the Motion to Stay, Debtor points to no findings that were clearly erroneous. In Debtor's supplement and the Statement of Issues on Appeal, Debtor points to post-hearing performance which was not in evidence before the Court at confirmation. Subsequent performance does not excuse the absence of credible evidence or render the findings clearly erroneous.

---

[62] *Id.*

[63] § 1307(c); *In re Stevenson*, 583 B.R. 573, 579 (B.A.P. 1st Cir. 2018). "Upon a showing of cause, the Court may dismiss a Chapter 13 case." *In re Clark*, 2024 WL 409494 (Bankr. D. Conn. Feb. 2, 2024). The Court may dismiss a case even without a motion from a party in interest under § 105(a) ("The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). The Court has previously issued an Order to Show Cause why the case should not be dismissed (doc. # 57) and the Trust has consistently requested dismissal in its filings (*see, e.g.,* docs. ## 84 at 6; doc. # 91 at 5.)

4. **Does a chapter 13 plan, which proposes to cure the debtor's mortgage arrearage in full within twelve months of the start of payments, and within four months of the confirmation hearing, indicate a lack of good faith in the filing of a chapter 13 case?**

In the Memorandum of Decision Denying Confirmation and Dismissing Case, the Court denied confirmation of the Plan based upon its finding that under the totality of the circumstances, the Plan had not been proposed in good faith under § 1325(a)(3). Debtor does not question those findings and misconstrues those findings to equate to a "lack of good faith in the filing of a chapter 13 case."[64] This issue does not warrant a substantial possibility of success on appeal.

Based upon a review of the original issues outlined in the Motion to Stay and those distilled in the Statement of Issues on Appeal, the Court determines Debtor does not have a substantial possibility of success on appeal in reversing this Court's denial of confirmation of the Plan or dismissal of the case. This determination weighs against granting a stay pending appeal.

### D. Public Interests that May be Affected.

The final factor considers whether a stay pending appeal is in the public interest. A stay will impact the public interest if it has "consequences beyond the immediate parties."[65] Debtor argues that there is no public interest implicated in her request for a stay because Debtor performed under the Plan despite this Court's denial of confirmation.[66]

Public interests implicated here tilt toward denying a stay. The public interest, for instance, "recognizes the desirability of implementing the legitimate expectations of creditors…to get paid."[67] Also, Debtor and the Trust reached an agreement which was reflected in a stipulated Judgment and Decree of Foreclosure which "served the salutary purpose of reaching finality in litigation, judicial economy, and compromise."[68] Accordingly, this factor weighs against a stay pending appeal.

---

[64] Contrary to Debtor's position, this Court did not dismiss Debtor's case for as a bad faith filing under § 1307(c). *See Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 373 (2007) ("a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief."). Rather, the Court found that the Plan had not been proposed in good faith under § 1325(a)(3).
[65] *In re Revel AC, Inc.,* 802 F.3d 558, 569 (3d Cir. 2015).
[66] Doc. # 104-2.
[67] *In re Motors Liquidation Co.,* 539 B.R. 676, 685 (Bankr.S.D.N.Y. 2015).
[68] *In re Blocker,* 411 B.R. 516, 520 (Bankr. S.D. Ga. 2009).

## **CONCLUSION**

The Court finds the four factors for analyzing a motion for stay pending appeal under Federal Rule of Bankruptcy Procedure 8007 weigh decisively against issuing a stay and Debtor's Motion to Stay is therefore denied.

This memorandum constitutes the Court's findings of fact and conclusions of law.

August 23, 2024
Burlington, Vermont

*Heather Z. Cooper*
Heather Z. Cooper
United States Bankruptcy Judge