U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JAN -8  AM 10: 01

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CAROL MARIE FENIMORE SAFARI,          )
                                      )
        Appellant,                    )
                                      )
    v.                                )          Case No. 2:24-cv-780
                                      )
JOHN AND TERESA FENIMORE LIVING       )
TRUST DATED DECEMBER 23, 2016,        )
                                      )
        Appellee.                     )

## ORDER ON APPEAL OF MEMORANDUM OF DECISION DENYING PLAN CONFIRMATION AND DISMISSING CASE

Appellant Carol Marie Fenimore Safari is the debtor in this bankruptcy appeal.  She seeks review of the decision of the Bankruptcy Court denying confirmation of her Chapter 13 plan and dismissing her case. (Doc. 2-49).[1]  Appellee John and Teresa Fenimore Living Trust is the sole secured creditor.  The trust holds a mortgage on Appellant's principal residence at 8 South Maple Street, Vergennes, Vermont.   The parties' dispute arises from Appellant's efforts to reinstate her mortgage through the remedy of cure of default afforded by 11 U.S.C. § 1322(b)(5).

### Facts

#### History of the Underlying Debt

Appellant and her former husband, Jacob Safari, purchased 28 South Maple Street together in 2013. (Doc. 4-2 ¶¶2–3.)  They did so with help from Appellant's father, John J. Fenimore. (Doc. 16-1 at 33 (Appellant's examination under oath).)  Mr. Fenimore was originally a co-signer on the mortgage and a co-owner. (Doc. 4-2 ¶¶ 2–3.)  In May 2017 Mr. Fenimore

---

[1] Citations are to the documents filed with the District Court and use this court's docket numbering system.

transferred his interest in the home to the couple.  (*Id.* ¶ 4.)  Through the John and Teresa

Fenimore Living Trust, he lent Appellant and her husband money to pay off the existing

mortgage. (Doc. 16-1 at 34).  The new loan in the amount of $269,108.34 is secured by a

promissory note and mortgage with a maturity date of May 1, 2027.  (Doc. 16-1 at 155–59.)

Monthly payments are $1,363.53 with a 5% late charge for any late payment.  (*Id.* at 155.)  Upon

maturity, the note calls for a balloon payment of unpaid interest and principal.  (*Id.*)

In 2018, Appellant and her husband separated.  They are now divorced.  (Doc. 16-1

at 32).  Appellant continues to live at 28 South Maple Street.  In 2017, she became unemployed

for approximately two years.  (Doc. 16-1 at 97-98).  She returned to work part-time in 2019.

(Doc. 16-1 at 98).   In July 2023, she regained full-time employment, earning $4,183 per month.

(Doc. 2-27 at 1; Doc.16-1 at 98).

Starting in November 2018, appellant failed to make monthly mortgage payments from

that date until August 2021.  In September 2019, Appellee commenced a foreclosure proceeding

in Vermont Superior Court.  Appellant resumed making mortgage payments on August 12, 2021,

when she made a payment of $1,363.53 that Appellee credited against the payment due on

November 1, 2018.  (Doc. 16-1 at 145.)  Appellee's proof of claim shows 13 monthly payments

between August 12, 2021, and August 15, 2022.  (*Id.* at 145.)   In September 2022, she stopped

making payments and did not resume payments until filing for bankruptcy in June 2024.

On October 14, 2022, the Vermont Superior Court entered a Judgment Order and Decree

of Foreclosure in the amount of $297,143.79. (Doc. 16-1 at 23).  The redemption period expired

on April 14, 2023.  Appellant filed a Chapter 13 petition on June 14, 2023, a month prior to a

foreclosure sale scheduled for July 13, 2023.  (Doc. 2-5; Doc. 4-1 at 2).

### Proceedings Before the Bankruptcy Court

Appellant filed her Chapter 13 petition on June 14, 2023.  (Doc. 2-5.)  The principal asset listed in the petition is her home at 28 Maple Street, which she described as a "Center door colonial build in 1820 with 6 bedrooms on .5 acre.  Town assessment $360,000 but property can be subdivided."  She valued the home at $600,000.  Other assets were an old car ($1,500) and personal property ($2,720).  She listed bank accounts totaling $17,333.  She identified Appellee as the sole secured creditor, to whom she owed $297,143.79 plus an unsecured loan of $60,000.  She showed $2,539.90 in monthly net income from earnings plus $1,350 in business income (rent paid by housemates).[2]  After monthly living expenses of $2,330, she showed monthly net income of $1,559.90.

The petition was accompanied by Appellant's first Chapter 13 plan.  (Doc. 2-6.)  It provided for monthly mortgage payments to the U.S. Trustee of $1,550 for 60 months and a final payment of $140,000 "paid from the sale of the building lot through the Plan.  The balance of the mortgage shall be paid in full, outside of the Plan."  The plan contained an additional explanation: "Debtor will be subdividing the property to sell off a building site.  The homestead and the building lot will be sold within five years of the filing with the balance of the secured debt being paid off in full."

On June 30, 2023, Appellant filed an affidavit in support of her proposed plan.  (Doc. 2-8.)  The affidavit stated that she has commenced making monthly mortgage payments of $1,550 to the trustee.  (*Id.*)  Throughout the period of the bankruptcy case, Appellant has made a

---

[2] Monthly rent income later fell to $775.  (Doc. 2-22.)  On December 5, 2023, Appellant amended schedule I to reflect an increase in net earned income to $3,114.27.  (Doc. 2-26.)  Total net income remained unchanged at $3,889.

3

regular monthly mortgage payment to the trustee, who continues to hold the funds.  (Doc. 11 at 2
(Trustee's Response to Debtor's Emergency Motion for Stay Pending Appeal)).

On July 31, 2023, Appellant amended her petition to show an additional asset (an IRA
account held by National Financial Services LLC valued at $69,788) and three additional debts:
$10,843.17 owed to CACH, LLC (a debt buyer); $134.88 owed to Discover Bank (credit card
debt); and $52,055.16 owed to the U.S. Department of Education (student loans).  (Doc. 2-9.)[3]

The parties appeared for a confirmation hearing concerning the first proposed plan on
October 17, 2023.  (Doc. 2-28.)  Through counsel, Appellant represented that she would be filing
an amended plan and an objection to the Department of Education's proof of claim.  (*Id.*)  The
court continued the confirmation hearing to December 5, 2023.  (*Id.*)

On December 5, 2023, Appellant filed monthly operating reports concerning rent she
received from housemates between June and November 2023.  (Docs. 2-20–2-25.)  The court
determined that the reports did not meet the requirements of its Operating Order and required
Appellant to file corrected reports by December 18, 2023.  (Doc. 2-28.)  The court extended the
time to file an amended Chapter 13 plan to the same date.  (*Id.*)  The court scheduled a hearing
for January 9, 2024, at which time Appellant was ordered to "show cause as to why her case
should not be dismissed for failure to meet her responsibilities under Chapter 13, to wit, a failure
to timely file operating reports under the Operating Order, unreasonable delay, and failure to
timely file a plan under § 1321."  (*Id.*)

---

[3] The three additional debts were resolved in the following manner: The debt to CACH
was time-barred.  (Doc. 2-15.)  In the Third Amended Plan, appellant reserved her right to seek
loan relief outside of bankruptcy or to file an adversary proceeding to determine dischargeability
of the student loans. The plan itself does not provide for payments on the student loans. (Doc 2-
39, p. 4,5).  The plan provides for full payment to Discover Bank. (Doc. 2-39, p. 5.)

Appellant filed the amended operating reports as ordered on December 18, 2023. As required, the reports now showed -0- income and expense figures for two inactive limited liability companies owned by appellant. Neither LLC had income or expenses during any reporting period. (Docs. 2-29—2-34).

Appellant also filed a Second Amended Plan on December 18, 2023. (Doc. 2-35.) The new plan provided for a sale of 28 Maple Street by June 2025 with monthly mortgage payments until sale. It included this explanation:

> Debtor will be selling her real estate by June 2025.
>
> The payoff under the Plan includes the arrearage as of June, 2023. Debtor has been making the full monthly payments under the Plan since then. The total arrearage is $42,601.88.
>
> The balance due on the mortgage shall be paid in full upon the sale of the real estate outside the Plan.
>
> In the event that the sale does not occur, the secured creditor will be entitled to file a Motion for Relief from Stay.

(Doc. 2-35 at 5.)

The Second Amended plan was short-lived. Appellant filed the Third Amended Plan on February 13, 2024. (Doc. 2-39.)[4] The court scheduled a confirmation hearing for March 12, 2024.

The Third Amended Plan contains the following summary:

> Debtor will be curing the arrearage by a withdrawal from an IRA on or before June 20, 2024. The payoff under the Plan includes the arrearage as of June 2023. Debtor has been making the full monthly payments under the Plan since then. The total arrearage is $42,601.88.

---

[4] Appellant also filed an alternative third plan on January 30, 2024. This plan appears as Doc. 73 in the Bankruptcy Court's docket. Appellant did not seek confirmation of that plan at the confirmation hearing on March 12, 2024.

> Upon completion of the Plan, Debtor will make the payments directly to the
> mortgagee and will pay off the balance due by the date the Note matures. The
> balance due on the mortgage when the note matures shall be paid in full from either
> the sale of the real estate outside the Plan or the refinancing of the property.

(Doc. 2-39 at 5.)  The total length of the plan from filing until repayment of the arrearage is 12

months.  (*Id.* at 1.)

The Bankruptcy Court held a confirmation hearing on March 12, 2024.  (Doc. 2-52.)

Appellee opposed confirmation on the grounds that the plan was not feasible, violated 11 U.S.C.

§ 1322(b)(2), and was not in compliance with 11 U.S.C. § 1325.  Appellee charged Appellant

with repeatedly ignoring court orders and submitting plans which unreasonably delayed the case.

(Doc. 2-40.)

Following the confirmation hearing, the U.S. Trustee submitted a memorandum

supporting the plan and addressing two concerns raised at the hearing by the Bankruptcy Court.

(Doc. 2-43.)  These issues were (1) whether payment of monthly mortgage payments and lump-

sum arrears through the trustee violates the Bankruptcy Court's local rules concerning mortgage

conduit payments and (2) whether the payment of $134 to Discover Bank was unfairly

discriminatory to the unsecured student lender.  In the trustee's opinion, neither issue would

prevent confirmation, which he supported.  (Doc. 2-43.)

On June 28, 2024, counsel for Appellant filed a status report with the Bankruptcy Court

stating that she had received $48,024.46 from her client and transmitted this amount to the

trustee.  (Doc. 2-48).  This is the amount previously identified in the Third Amended Plan as

proceeds from liquidating Appellant's 401k account.

On July 5, 2024, the Bankruptcy Court issued its decision denying plan confirmation and

dismissing the case.  (Doc. 2-49.)  The court denied confirmation for the following reasons:

- The plan does not cure the default within a reasonable time.  In the Bankruptcy Court's view, "[n]o payments have been made on the arrears during the pendency of the case." (*Id.* at 6.)  Instead, "the Plan proposes to pay the arrears one year *after* Debtor commenced her bankruptcy case and approximately 21 months after she agreed to the amount of arrears [in the state foreclosure case.]" (*Id.*)

- Debtor failed to establish a credible basis that she can support the monthly mortgage payments as set forth in the Plan.  (*Id.* at 7.)  She provided no evidence about how her mortgage payments will be made "outside the Plan" after completion of the 12 months following the original filing.  (*Id.* at 9.)

- The Plan, to the extent it is premised on a sale of the residence in 2027, does not include details about a sale sufficient for confirmation.  (*Id.* 9–10.)

- Appellant failed to provide evidence that she has a feasible prospect of refinancing the mortgage in 2027.  (*Id.* at 10–11.)

- The plan was not proposed in good faith.  (*Id.* at 11.)

The Bankruptcy Court dismissed the bankruptcy case for similar reasons:

- The schedules of assets were inaccurate and incomplete, and the operating reports contained discrepancies in the reporting of rents received from housemates.  (*Id.* at 13–14.)

- Appellant engaged in unreasonable delay since the "case has been pending since June 14, 2023, an "exceptionally long time" to continue without a confirmed plan." (*Id.* at 14.)

- The plan is not feasible.  (*Id.*)

Appellant filed a timely notice of appeal on July 16, 2024.  (Doc. 2-51.)

**Proceedings Before the District Court**

Pursuant to BR 8007, Appellant sought and was denied a stay by the Bankruptcy Court pending appeal. (Doc. 4-2.) On August 30, 2024, she renewed her motion for stay before the District Court. (Doc. 4.) On September 3, 2024, the District Court issued an order granting a temporary stay. (Doc. 7.) On September 30, 2024, Appellant filed her brief on the merits of the appeal. (Doc. 13.) Appellee filed a response on October 29, 2024. (Doc. 16.) On November 14, 2024, the court issued an amended hearing notice advising that the hearing set for November 21, 2024, would address both the motion for stay and the merits of the appeal. (Doc. 18.) The court held a hearing by video conference on November 21, 2024.

**Grounds for Appeal**

On appeal Appellant raises four issues. These are:

- Whether a Chapter 13 plan that proposes to repay an arrearage within 12 months of the start of payments and 4 months from the confirmation hearing cures the default within a reasonable time frame;

- Whether completion of all required payments to the trustee renders the Bankruptcy Court's finding that Appellant failed to demonstrate an ability to make payments under the plan clearly erroneous;

- Whether a 12-month plan providing for full payment of the arrears and other debt (except the unimpaired student loan debt) amounts to unreasonable delay prejudicial to the creditors;

- Whether a Chapter 13 plan curing the mortgage arrears within 12 months of filing indicates a lack of good faith.

8

### Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 158, the District Court has subject matter jurisdiction over an appeal from a final judgment of the Bankruptcy Court denying confirmation and dismissing the case.

### Analysis

**I.     The Bankruptcy Court's Ruling that the Chapter 13 Plan Failed to Cure the Default Within a Reasonable Time Frame was Clearly Erroneous**

**A.     Standard of Review**

On review, the district court applies a "clear error" standard to factual determinations made by the bankruptcy court.[5]  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation omitted).  The standard of review on purely legal issues is de novo and without deference to the bankruptcy court.  *Caswell v. Lang*, 757 F.2d 608 (4th Cir. 1985); *In re New England Fish Co.*, 749 F.2d 1277 (9th Cir. 1984); *In re Bodin Apparel, Inc.*, 56 B.R. 728 (S.D.N.Y. 1985).

In the case of mixed questions of law and fact, the district court identifies the standard on appeal by determining "whether answering it entails primarily legal or factual work." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).  In resolving mixed questions, the bankruptcy court frequently "takes a raft of case-specific historical facts, considers them as a whole, balances them one against another—all

---

[5] Bankruptcy Rule 9014 governing "contested matters" follows BR 7052 in adopting the clear error standard of F. R. Civ. P. 52(c) for findings of fact and in recognizing the "due regard" owed to determinations of the credibility of witnesses.

to make a determination [concerning the application of a provision of the Bankruptcy Code.]"
*Id.* at 398.  In such an instance, the issue before the bankruptcy court is primarily factual, and the clear error standard applies on appeal.  *Id.* at 399.  If the issue is primarily legal because it "require[s] courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard," review is de novo.  *Id.* at 396.

Whether Appellant's Third Amended Plan provided for payment of arrears within a reasonable time is a mixed question of fact and law.  Answering the question requires the application of facts about the history of the parties' transaction and the proceedings before the Bankruptcy Court in order to apply the statutory standard of a "reasonable time."  11 U.S.C. § 1322(b)(5).  "Most courts have concluded that the statute vests the determination [of reasonableness] in the sound discretion of the bankruptcy court, requiring a case by case determination utilizing a flexible standard."  W. Homer Drake et al, *Chapter 13 Practice and Procedure* § 5.31 (2024 Ed.).  The Bankruptcy Court's application of the § 1322(b)(5) standard of reasonable time is primarily a factual question.  Accordingly, the court applies the more restrictive clearly erroneous standard to this mixed question of fact and law.

> **B.**     **The Bankruptcy Court committed clear error in determining that the 12-month time frame for cure of the arrears was not reasonable**

Since passage of the Bankruptcy Reform Act in 1978, Pub. Law No. 95-598, Chapter 13 debtors have had the right to reinstate the original terms of their home mortgage loans by successfully completing a plan that has been confirmed by the bankruptcy court.  Mortgages securing the debtor's principal residence are eligible for reinstatement or "cure," allowing debtors to retain possession of the home and resume payment of their mortgage on the original terms on the condition that they repay any arrearage and make regular payments as scheduled in their promissory note within the period of the plan.

The reinstatement of a residential mortgage through cure of a default is principally governed by 11 U.S.C. § 1322(b)(5). This provision states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due." *Id.*

> The basic cure concepts are simple and straightforward. If a debtor has fallen behind in payments on a secured claim, typically a real estate mortgage, a plan may provide for payment of the amounts necessary to bring the debt current during the term of the plan and for the resumption of regular payments in accordance with the loan documents on a current basis.

Drake et al, *Chapter 13 Practice and Procedure* § 5.25.

For homeowners, the cure provision is frequently the primary benefit of Chapter 13 because they may retain their homes after emerging from bankruptcy. In *In re Taddeo*, 685 F.2d 24 (2d Cir. 1982), the Second Circuit recognized the intent of Congress to extend this protection to mortgagors already subject to foreclosure in state court. "When Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to 'de-accelerate' their mortgage and reinstate its original payment schedule." *Id.* at 26. In the present case, in which Appellant had almost no unsecured consumer debt and her student loans were non-dischargeable, the reinstatement of her mortgage was the principal benefit available to her through the Chapter 13 filing.

Debtors seeking to cure their mortgage arrears must submit a plan meeting certain conditions. One condition is that the default must be cured *within a reasonable time*. 11 U.S.C. § 1322(b)(5). Section 1322(b)(5) leaves the determination of what constitutes a reasonable time for decision by the bankruptcy courts without fixed guidelines. *Collier on Bankruptcy* observes that courts have "often allowed cure periods of three years or longer, sometimes extending

beyond the time in which other creditors are satisfied." 8 Collier on Bankruptcy ¶ 1322.09[5] (16th 2024).   In determining what is a reasonable time for cure, bankruptcy courts have developed lists of factors including past payment history; length of the repayment period under the contract; reasons for the arrearage; nature of the collateral; and whether the debtor is putting forth their best effort to cure. *See In Re Bechman*, 9 B.R. 193 (Bankr. N.D. Iowa 1981).

In the present case, the Bankruptcy Court found unreasonable delay by Appellant in curing the arrearage before and after filing.

### 1.   Delay Before Petition

Prior to filing, Appellant owed $42,601.88 in arrears on the mortgage.  (Doc. 16-1 at 154).   The proof of claim indicates that Appellant first missed a payment on November 1, 2018.[6]   During this period, Appellant separated from her husband and lost full-time employment.  Between 2018 and 2021, she fell substantially behind on her mortgage.  She resumed payments for 13 months between August 2021 and August 2022.  (*Id.*)  She then ceased making payments until filing for bankruptcy in June 2023.   By the time she filed, she had incurred arrears of $36,474 of principal and interest plus interest and fees. In her memorandum, Appellant's counsel represents that, during the pendency of the foreclosure case, Appellant sought mediation, modification of the loan, and assistance through the non-profit NeighborWorks and the Vermont Housing Finance Agency—all to no avail.

Like many before her, Appellant fell into financial distress before she filed for bankruptcy.  Unlike many, she did not incur substantial credit card debt or increase her debt in other ways.  Instead, she made efforts while the foreclosure case was pending to improve her

---

[6] November 1, 2018, is the date Appellee assigned to the first payment received when Appellant resumed monthly payments between August 2021 and 2022.  (Doc. 16-1 at 154).

finances by finding new employment and taking in housemates.  These measures enabled her to make 13 monthly payments while the foreclosure was pending.

The Bankruptcy Court found that Appellant's pre-petition delay was unreasonable.  The court reasoned, "Debtor filed for bankruptcy protection in month 72 of the mortgage, at which time she was late on 42 payments, or more than half of the mortgage payments; hence, the Foreclosure Action."  (Doc. 2-49 at 6.)

### 2.      Delay During the Bankruptcy

Appellant filed for bankruptcy on June 14, 2023.  (Doc. 2-5.)  In her first plan, Appellant proposed to make monthly payments of $1,550 for 60 months.  The first plan calls for a lump-sum payment of $140,000 within the 60 months, realized through subdivision of the lot, and repayment of any remaining mortgage balance "outside of the Plan."  (Doc. 2-6.)

In her second plan, filed on December 18, 2023, Appellant proposed to shorten the deadline for repayment of the arrears to 24 months from the original filing date.  (Doc. 2-35.)  Both plans proposed to pay off the mortgage, including the arrears, through a sale of the property or a subdivision of the relatively large half-acre lot.

In her third and final plan, Appellant proposed to pay the arrears on or before June 2024 using the principal in a 401k plan from a previous employer.  (Doc. 2-39.)  Appellant identified the 401k plan in an amended schedule filed with the Bankruptcy Court on July 31, 2023.  (Doc. 2-9.)  On June 28, 2024, Appellant's counsel notified the Bankruptcy Court of the wire transfer of $48,024.46 to the U.S. Trustee.  (Doc. 2-48.)  Denial of confirmation and dismissal of the case followed a week later.

In addition to the finding of pre-petition delay, the Bankruptcy Court found unreasonable delay within the period of the plan itself.  The court ruled that "[n]o payments have been made

13

on the arrears during the pendency of the case. Rather, the Plan proposes to pay the arrears one year *after* Debtor commenced her bankruptcy and approximately 21 months after she agreed to the amount of the arrears." (Doc. 2-49 at 6.)

The court pauses to examine this statement by the Bankruptcy Court. It is flatly wrong. Appellant paid the entire amount of the arrears to the trustee as proposed by the Third Amended Plan. At the confirmation hearing, both Appellant and the trustee explained how and when the arrears payment would be made. Through her attorney, Appellant notified the Bankruptcy Court that she had made the payment as promised. Notice occurred before the Bankruptcy Court denied confirmation. The Bankruptcy Court was mistaken in its view that no payments were made against the arrears. In fact, the trustee has been holding the entire arrears payment since Appellant made that payment in June 2024.

### 3. What constitutes a reasonable time to repay arrears

Few objective guidelines are available to measure what constitutes a reasonable time to repay arrears within the period of the plan. The facts of the case generally support Appellant's position that her third plan provided for payment within a reasonable time. These facts include:

- Past payment history. Appellant became insolvent and failed to pay her mortgage for approximately 4 years. The missed payments led to foreclosure which led to the bankruptcy petition. Both before and after her bankruptcy filing, she resumed regular payments—for 13 months while the foreclosure was pending and during the entire period of this bankruptcy case. This factor is mixed. At about four years, the period of insolvency and default on the mortgage is long. During that time, Appellant resumed payments for over a year and tried various strategies to remedy her default short of bankruptcy.

14

- Length of the repayment period.  The plan proposes to repay arrears within 12 months, a relatively short period of time.

- Reasons for the arrears.  There is little doubt that two adverse events—the loss of employment and a divorce—caused Appellant's default.  She is now fully employed, and she has taken in housemates to assist with her living expenses.  There is no indication in the record of problems with excessive unsecured debt or irresponsible spending.  This factor supports the reasonableness of the one-year plan.

- Nature of the collateral.  The mortgage debt is secured by a six-bedroom single family home on a large lot in Vergennes, Vermont.  The Appellant values it at $600,000.  Neither party offered appraisal evidence.  When the loan matures in May 2027, the balloon payment will be $216,000. (Doc. 2-52 at 15.)  On the limited record available, it appears that Appellee is no less secured now than at the outset of the loan.

- Best efforts to cure.  The Appellant has made monthly payments to the trustee during the bankruptcy.  She has liquidated a retirement account, incurring taxes and penalties, and has placed the net funds in the hands of the trustee.  These steps demonstrate a willingness to make every effort to cure the arrearage within a short period of time.

In his memorandum supporting the motion for a stay on appeal, the trustee explained the reasons he supported confirmation of the Third Amended Plan.  (Doc. 11.)  Relying upon the decision of the Second Circuit in *In re Taddeo*, he identified the right of a Chapter 13 debtor "to cure a mortgage arrearage and reinstate a defaulted mortgage to current status."  (*Id.* at 2.)  He

credited the debtor with "successfully [making] all of the payments under the plan which would have not only brought the mortgage current, but also paid the allowed unsecured claims in full, other than the long term student loan claims which the Plan left unimpaired, to be paid directly by the debtor— essentially making all creditors whole, with no significant impairment." (*Id.* at 3.) He confirmed that he had received "additional payments from the debtor which would cover [mortgage] payments through September. The current balance held by the trustee at this point is $49,138.87." (*Id.*) In his experience, much longer time frames were common. "Normally, Chapter 13 cases in Vermont and across the country take anywhere from 36 to 60 months to cure mortgage arrears." (*Id.* at 2.) The trustee described the time to pay the arrears as "a remarkably short time compared to most cases." (*Id.*)

The trustee's analysis is compelling. The remedy of cure of a default is a statutory right—even when the secured creditor would prefer to sell the debtor's residence and obtain repayment before the maturity date. See *In re Taddeo*, 685 F.2d at 24. A month after filing, Appellant identified a retirement account sufficient to pay the arrears. She made regular mortgage payments. After unsuccessfully proposing two alternative plans that would have spared her the tax and penalty consequences of liquidating her retirement account, she submitted a plan that would bring the mortgage current within 12 months of filing. The denial of confirmation of her plan on grounds that she was too slow to repay the arrears was clearly erroneous.

The district court respects the experience of the Bankruptcy Court in identifying what is a reasonable timeframe to repay the arrears. Had the timeframe for payment of the arrears been five years as Appellant originally proposed or even two as appeared in the second plan, the outcome might be different. Both of those plans also depended on the future contingency of a

16

sale or subdivision to repay the arrearage.  Denial of confirmation of these plans may well have been justified and would likely fall within the wide latitude accorded to decisions of the Bankruptcy Court.

The Third Amended Plan is different.  It provides for cash on the proverbial barrel head. It calls for repayment of arrears within a year from filing – light-speed by the standards of some debtors and plans.  The payment was not contingent.  Its source was identified as a recently discovered IRA account.  The Appellant made the payment to the trustee within the time proposed in the plan and notified the Bankruptcy Court before the Bankruptcy Court denied confirmation.   The only factor on the non-exhaustive list frequently considered by bankruptcy courts in determining reasonableness of the time to repay arrears is the factor of multiple years of delay before Appellant filed her petition.   By itself, that is simply an insufficient reason to bar a Chapter 13 debtor from the remedy of cure.  The undisputed facts of the case cannot support a determination that the Third Amended Plan did not provide for cure of the arrears within a reasonable time.  In the words of the Supreme Court in the *Anderson* case, the District Court "is left with the definite and firm conviction that a mistake has been committed." 470 U.S. at 573. For this reason, the court reverses the decision to deny confirmation for clear error. [7]

---

[7] In denying confirmation, the Bankruptcy Court also identified a dispute between Appellee and the trustee about "whether the payments made outside the Plan while Debtor retains the property (after the June 2024 lump sum payment and before the balance is paid through either sale or refinance) constitute maintenance payments "under the Plan…" (Doc. 2-49 at 6).  The court raised this issue with the trustee at the confirmation hearing.  In a response to the court's inquiry, the trustee explained that "[b]ecause [the plan] provides for the monthly payment each month prior to the final payment of the lump sum, and both the monthly payments and lump sum will be through the Plan, trustee submits that it does not deviate from the local rules on [Conduit Mortgage Payments.]" (Doc. 2-43 at 1-2) This exchange relates to Vermont's Local Bankruptcy Rule 3015-6 ("Conduit Mortgage Payment Plans in Chapter 13") establishing a procedure for payment of mortgage payments by the debtor to the trustee for ultimate payment to the creditor.  In denying confirmation, the Bankruptcy Court noted that "Debtor did not seek a Waiver Order from this [Local Rule] which requires a Delinquent debtor to make Conduit

## II.   Completion of All Required Payments to the Trustee Demonstrated the Debtor's Ability to Make Payments Under the Plan

The Bankruptcy Court denied confirmation for a second reason: "Debtor has failed to demonstrate an ability to make payments under the Plan." (Doc. 2-49 at 9.) In support of this conclusion, the Bankruptcy Court pointed to discrepancies over time in the monthly rent payments from Appellant's housemates and a lack of information about the sale or refinance of the mortgage upon maturity in May 2027.

Section 1325(a)(6) of Title 11 of the U.S. Code requires a Chapter 13 debtor to demonstrate that they "will be able to make all payments under the plan and to comply with the plan." In this case, by the time of the confirmation hearing, Appellant had made nine out of twelve monthly payments contemplated by the plan, and she had located funds sufficient to make a lump-sum payment repaying the arrears in full. By the time of the order denying confirmation, she had actually made all payments. Despite strong evidence that Appellant had met the terms of her proposed plan, the Bankruptcy Court determined that she had not demonstrated that payment of the arrears was feasible. The decision denying confirmation identified two concerns that stood in the way of a determination that the Third Amended Plan had a "reasonable likelihood of success."

---

Mortgage Payments through the Plan to be disbursed by the Trustee." Doc 2-49 at 7. The Bankruptcy Court's criticism concerns the manner of payment of the arrears through the trustee – not the reasonableness of the time in which the payment was made. Any dispute over how to meet the requirements of Local Rule 3015-6 can be resolved to the Bankruptcy Court's satisfaction through the terms of a confirmation order. No authority suggests that differing views about the application of the conduit mortgage procedures to money held by the trustee supplies a reason to deny the remedy of cure.

18

### A.    Payments from Housemates

Commencing with the month of June 2023, Appellant has filed monthly operating reports showing income received from housemates and house expenses. Her motion to file an annual report was denied. Because she omitted income figures for two limited liability corporations that she owns, the court ordered her to file amended reports. She did so, filing reports showing -0- income for the inactive LLCs. The monthly rent totals in her operating reports varied as housemates came and left. The June 2023 gross income was $1,350. (Doc. 2-29.) In August 2023, gross income fell to $775 where it remained for the balance of 2023. In January, the operating statement showed $775 paid from the escrow of the "last month's rent." (Doc. 2-37.) The same entry appears for February 2024 with a payment of $760 from "last month's rent." (Doc. 2-42.) In March 2024, rental income improved with a gross payment of $1,100 (Doc. 2-46.)

All of this detail would be inconsequential except that the Bankruptcy Court identified these variations as one of the reasons for denying confirmation:

> Debtor's scheduled rental income has ranged from $1,350 per month, in her first schedules, to $775 per month in her third amended schedules, to $1,100 per month in her fourth amended schedules. Debtor was unable to explain the variation, and Debtor's operating reports do not match her rental income on her schedules.

(Doc. 2-49 at 8.)

As anyone who has lived with housemates can attest, they come and go. In her testimony at the confirmation hearing, Appellant stated as much:

> Q. And when we filed the petition, you had some renters on your property?
>
> A. Yes. The property offered several bedrooms that were easy to rent, and so I—with the housing shortage, yes. And my desire to pay what I needed to pay to live, there are renters in my home.
>
> Q. And how many?

A.  At that time, there was—I'm afraid that I can't quite remember because it is a month-to-month thing.  There might've been one renter or two renters at that time.

Q.  And how many renters do you have now?

A.  I have one.

Q.  And what is that rent now?

A.  $1,100 per month.

(Doc. 16-1 at 99.)  Whether Appellant had one tenant or two or whether she applied a security deposit or "last month's rent" payment to rental income in January and February 2024 is hardly a basis for ruling that Appellant cannot make the 12 mortgage payments required under the plan.  What matters is that Appellant reported rental income of between $775 and $1,350 a month throughout the bankruptcy.  This income was at least half of the monthly mortgage payment.  With this relatively small amount of rental income and her earned income, she made the 12 monthly post-petition payments prior to the order dismissing her case.

The Bankruptcy Court's conclusion that the Plan is not feasible because of uncertainty about the amount of the rental income is clearly erroneous.

**B.    Sale or Refinance**

The Bankruptcy Court also denied confirmation on the ground that the Third Amended Plan lacked sufficient information supporting the feasibility of repayment when the balloon payment becomes due on May 1, 2027.  This showing is not required by § 1322(b)(6) because the balloon payment was never part of the Third Amended Plan.  Instead, it was part of the original loan.  The language of § 1322(b)(6) is specific.  It requires the debtor to demonstrate that she can make payments under the plan and comply with the plan.  Debtors who qualify for cure and reinstatement do not have to prove that they can make payments after the plan until maturity

of the note.  Their obligation is to show that it is feasible to make payments, including arrears, *within* the plan.

In its third and final form, Appellant's plan is 12 months in length.  Paragraph 2.1 ("Plan Payments and Length of Plan") states "Debtor(s) will make regular payments to the trustee as follows: $1,550.00 per Month for 12 months."  Paragraph 2.4 states: "$48,024.46 shall be paid on or before June, 2024 to pay off the arrearage and the balance due under the Plan by a withdrawal from the IRA which [debtor] was not aware of when the case was initially filed."

(Doc. 2-39.)  Paragraph 8.1 provides a narrative with additional detail:

> Debtor will be curing the arrearage by a withdrawal from an IRA on or before June 30, 2024.  The payoff under the Plan includes the arrearage as of June, 2023.  Debtor has been making the full monthly payments under the Plan since then.  The total arrearage is $42,601.88.
>
> Upon completion of the Plan, Debtor will make the payments directly to the mortgagee and will pay off the balance due by the date the Note matures.  The balance due on the mortgage when the note matures shall be paid in full from either the sale of the real estate outside the Plan or the refinancing of the property.

(Doc. 2-39.)  These paragraphs describe a 12-month plan with reinstatement after cure.  The final balloon payment—which was always a feature of the loan—occurs *outside* of the 12-month plan.  The parties agree that the balloon payment will be about $216,000.  (Doc. 2-52 at 15.)[8]

Appellee has provided several cases in which bankruptcy courts rejected plans on grounds that a future balloon payment was not feasible.  See *In re Krus*, 582 BR 218, 222 (Bankr. W.D. Wi. 2018); *In Re Fantasia*, 211 B.R. 420 (BAP 1st Cir. 1997).  In these cases, the balloon payment was a feature of the plan, not the original loan.

---

[8] At the confirmation hearing, counsel for Appellant informed the court that the balloon payment in 2027 would occur outside of the plan, either by sale or refinancing.  As counsel explained, "the arrearage is being cured separate from the sale.  I mean, the sale will be coming down the road, but the Debtor will be out of Chapter 13 by then for the refinancing."  (Doc. 2-52 at 48.)

*In Re Fantasia* concerned a default on three-year promissory note. The plan proposed a five-year repayment schedule with a balloon payment remaining at the end. The BAP decision reversed the bankruptcy court's confirmation order for several reasons including the debtors' failure "to show[] that they would have funds available to make the balloon payment." *Id.* at 424.

*In re Krus* is similar. After defaulting on a three-year obligation (including a balloon payment), debtors proposed to repay the arrears over 60 months without interest with a final balloon payment for any unpaid principal, interest, or other charges. The bankruptcy court denied confirmation for lack of evidence that debtors could pay the balloon payment when it fell due.

*Krus* and *Fantasia* are correct in requiring consideration of whether it is feasible for the debtors to make balloon payments contemplated within a plan. These cases do not support the Bankruptcy Court's application of the feasibility requirement of § 1322(b)(6) to payments that fall due years after completion of the plan.

In a case of "the dog that didn't bark in the night," there is a dearth of cases in which bankruptcy courts have denied cure and reinstatement under § 1322(b)(6) because the debtor cannot demonstrate an ability to make payments after the plan. In many cases, a secured creditor might prefer to avoid reinstatement and go directly to a sale of the collateral due to concerns about the debtor's ability to make post-plan payments in future years, often for a long period of time. The same reasoning applies to loans such as the one in this case that anticipate a balloon payment at the end of the loan. Such cases do not appear in the law reports because the tests of timeliness and feasibility apply to the plan period—not to the subsequent life of the loan.

22

The denial of confirmation on the ground that Appellant failed to prove that it was feasible for her to make the balloon payment due in 2027, three years after completion of the plan in June 2024, was clear error.

### III.     The Bankruptcy Court's Denial of Confirmation on Grounds of Bad Faith was Clearly Erroneous

The Bankruptcy Court invoked 11 U.S.C. § 1325(a)(3) to deny confirmation on grounds that Appellant "unfairly manipulated the Bankruptcy Code and did not propose the Plan in good faith." (Doc. 2-49 at 13.)  In reaching this decision, the Bankruptcy Court observed that Appellant "filed this case to thwart the foreclosure process," amended her filings "often at the last moment prior to hearings and generally in a responsive posture to Court orders or the Trust's motions, not proactive in pursuit of a confirmable plan," testified "incredibly" that she had not read or understood the filed documents, failed to file operating reports for several months, and provided monthly income figures that did not "correlate to the amended schedules." (Doc. 2-49 at 12.)  These facts, taken as a whole, led the Bankruptcy Court to conclude that the plan was not proposed in good faith.

As the Bankruptcy Court recognized, denial of confirmation on grounds of bad faith is a narrow doctrine applicable only in egregious cases. *In re Ames*, 2022 WL 2195469 (Br. E.D. Pa. 2022).  In reviewing this decision, the District Court applies a clearly erroneous standard to a discretionary ruling.  Considered piece by piece, or as a whole, Appellant's shortcomings do not add up to egregious, bad faith conduct.

The Bankruptcy Court's initial observation that the case was filed to thwart foreclosure is almost certainly true—and also applicable to every Chapter 13 proceeding in which a debtor seeks reinstatement of their mortgage in lieu of foreclosure.  The cure and reinstatement remedy is an entirely legal alternative to a foreclosure sale, even when it is not favored by the lender.

The defects in Appellant's filings are immaterial to the Third Amended Plan and generally inconsequential.  One month after her initial bankruptcy filing, Appellant amended "Schedule A/B Property" to show an IRA account in the amount of $69,788.  (Doc. 2-9.)  This amendment would ultimately become an important factor in her third and final plan.  At the same time, she added three unsecured claims to "Schedule E/F."  None of these played a significant role in her proposed plan since she paid off a minor credit card debt to Discover ($134.88); the debt to CACH, LLC was time-barred; and the student loans were not dischargeable.  These amendments supply no support for an allegation of bad faith or misconduct by the debtor.  They occurred early in the life of the case.  Their accuracy has never been questioned.   They cannot reasonably be considered evidence of "an apparent manipulation of the facts" as the Bankruptcy Court determined.  (Doc. 2-49 at 12.)

The other defect in the filings concerns the reporting of operating income.  The original reports were unsigned and failed to report the -0- income amounts for the two inactive LLCs. Appellant corrected these errors after being ordered by the Bankruptcy Court.  Appellee and, ultimately, the Bankruptcy Court also criticized Appellant because the monthly rental income "does not correlate to the amended schedules."  (Doc. 2-49 at 12.)  Appellant filed two sets of operating reports.  Both reported the same amount of rental income for each month.  No one asserts that Appellant concealed or inflated the monthly rents she received.  (There was a minor dispute over whether the $775 and $760 reported for January and February 2024 were accurately described as taken from a security deposit.)  The record does not support the Bankruptcy Court's conclusion that the reporting of rental income and the amendment to show -0- income from the LLCs shows unfair manipulation of the Bankruptcy Code.

24

The Bankruptcy Court's determination that the confirmation plan was filed in bad faith was clearly erroneous.

## IV.    The Bankruptcy Court Erred in Dismissing the Case Pursuant to 11 U.S.C. § 1307

The Bankruptcy Court dismissed this case pursuant to 11 U.S.C. § 1307 for reasons of unreasonable delay and denial of a confirmation plan. The court reviews this ruling for clear error.

Delay frequently forms a basis for dismissal in cases of repeated filings, *In Re Smith*, 395 B.R. 711 (Br. D. Ka 2008) (six filings in five years), and in cases in which the debtor's motivation was not to adjust his debts but rather to delay payment. *In re Shaheen*, 268 B.R. 455 (Br. E.D. Va. 2001).

This case does not fit within either pattern of cases commonly dismissed for delay. It is Appellant's only bankruptcy filing. Over the course of nine months between initial filing and submission of the third amended plan, she proposed two alternative plans. Neither won confirmation. She submitted the Third Amended Plan in compliance with a scheduling order issued on February 7, 2024. (Doc. 2-49 at 3.)

The Third Amended Plan was not late in the sense that it was submitted in violation of court deadlines. The Bankruptcy Court expressly permitted its filing and scheduled a confirmation hearing. It was also not late in the sense that it was submitted too long after the inception of the case. This court has already addressed the question of whether a 12-month plan period is a reasonable time for purposes of 11 U.S.C § 1322(b)(5). For similar reasons, filing an amended plan within nine months of filing cannot reasonably be considered so late as to warrant dismissal.

The decision to dismiss the case on the basis of delay or because a plan was not confirmed was clearly erroneous.

## V.       Motion to Stay

The court grants the motion to stay filed at the outset of the case.  The court previously granted a temporary stay to allow time for the parties to file memoranda..  The court applies four criteria in granting the stay.  See *Hirschfeld v. Board of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993).  Appellant will suffer irreparable injury if she loses her home to a foreclosure sale and is denied the remedy of cure and reinstatement.  Appellee suffers little or no injury through the stay.  The trustee is holding at least a year of monthly payments plus the arrears claimed in Appellee's proof of claim.  Because the decision on stay issues at the same time as the ruling on the appeal, it is now clear that Appellant has succeeded on her appeal. There are no significant public interests at issue in this dispute.

### Conclusion

The District Court reverses the decision of the Bankruptcy Court dated July 2, 2024. (Doc. 2-49.)  The case is remanded for further proceedings consistent with this decision.  The court GRANTS the motion for stay of foreclosure.

Dated at Burlington, in the District of Vermont, this 8th day of January, 2025.

/s/ Geoffrey W. Crawford
District Judge
United States District Court